J-S04017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER LEE VASQUEZ, | |
| Appellant | No. 42 WDA 2015 |

Appeal from the Judgment of Sentence of December 1, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0011826-2013

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 22, 2016**

Appellant, Christopher Lee Vasquez, appeals from the judgment of

sentenced entered on December 1, 2014.[1]  We affirm.

The able trial court prepared the following summary of facts:

> Appellant is accused of raping [the victim], the daughter of his live-in girlfriend, [T.D.], while [the victim] was visiting her mother on a summer weekend in 2011.  [The victim] was [fifteen] years old at the time of the incident.  [The victim], according to her father and stepmother, is an intellectually delayed girl who is a grade behind in school according to her Individualized Education Plan ("IEP").  After the alleged incident occurred, [the victim] returned to her father's residence, but did not tell her father or her stepmother what had happened, because she wanted to forget about it.  Two years later, when [the victim] was in

_____

[1] Appellant's judgment of sentence was made final when the trial court, on December 8, 2014, denied his post-sentence motion.

*Retired Senior Judge assigned to the Superior Court.

the tenth grade, she disclosed the rape to a school counselor, Ms. Fink. She told Ms. Fink as a way to explain her poor behavior in school. Shortly thereafter, the counselor called [the victim's] stepmother, who then called [the victim's] father at his place of work. When [the victim] went home from school that day to her father and stepmother, she disclosed to them about the rape.

Trial Court Opinion, 9/1/15, at 3 (citations to record and footnote omitted).

Following a police investigation, the Commonwealth charged Appellant with one count each of rape, sexual assault, statutory sexual assault, corruption of minors, and indecent assault.[2] On May 28, 2014, Appellant filed a motion *in limine*, in which he sought to admit information from the victim's certified medical records "for the sole purpose of impeaching the alleged victim's credibility." Motion in Limine, 5/28/14, at 2. This motion was heard on the first day of trial, September 8, 2014, immediately after the trial court gave its opening remarks to the jury and dismissed the jurors for a lunch break. After an in-camera hearing, the trial court denied Appellant's motion.

After counsel presented their opening statements, Appellant's trial counsel informed that trial court that Appellant "wants to enter a [guilty] plea if it is still on the table, the offer that was extended initially." N.T., 9/8/14, at 55. After a brief recess, the assistant district attorney told the

_____

[2] 18 Pa.C.S.A. §§ 3121(a)(1), 3124.1, 3122.1, 6301(a)(1)(i), and 3126(a)(8), respectively.

trial court that the original plea deal was withdrawn, but that the Commonwealth was willing to offer a new plea deal that would leave "sentencing to the Court." N.T., 9/8/14, at 59. After conferring with trial counsel, Appellant decided to proceed with trial. *Id.* at 61. The trial court then adjourned the proceedings for the day.

The next day the Commonwealth presented the victim's testimony, as well as the testimony of her father, stepfather, a detective involved in the investigation, and T.D. In his defense, Appellant presented the testimony of his stepbrother, who claimed that the incident as described by the victim could not have happened because Appellant was with him playing cards. Following closing arguments, and the trial court's charge, the jury convicted Appellant on all counts. On December 1, 2014, the trial court sentenced Appellant to an aggregate term of 89 to 252 months of imprisonment. This appeal follows the trial court's denial of Appellant's post-sentence motion. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

> [I]. DID THE [TRIAL] COURT ERR BY DENYING [APPELLANT'S] MOTION IN LIMINE SEEKING TO ADMIT THE [VICTIM'S] CERTIFIED MEDICAL RECORDS CONTAINING STATEMENTS MADE BY THE [VICTIM] WHICH WERE RELEVANT TO IMPEACH THE CREDIBILITY OF HER TESTIMONY AT TRIAL?
>
> [II]. IS [APPELLANT] ENTITLED TO A NEW TRIAL BECAUSE THE JURY'S VERDICT WAS SO CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED THAT IT SHOCKS ONE'S SENSE OF JUSTICE?

> III.     WAS THE SENTENCE IMPOSED BY THE [TRIAL] COURT MANIFESTLY EXCESSIVE, UNREASONABLE, AND AN ABUSE OF DISCRETION?

Appellant's Brief at 5.   We will address Appellant's issues in the order presented.

Appellant first challenges the trial court's denial of his motion in limine. The trial court summarized Appellant's proposed evidence as follows:

> In the medical records, a statement is attributed to the [victim]. Appellant sought to admit a note in the medical record purportedly authored by Dr. Adam Ray, dated April 13, 2012. The specific information, written under history of present illness, says "[p]resent is 15-year-old female that tells me earlier today she had her first intercourse with a 16-year-old male."  Of particular relevance, other statements are attributed to [the victim's] mother.  [The record is unclear as to whether "mother" refers to T.D. or the victim's stepmother.]  The final assessment form, under chief complaint, says "[h]ad first sexual experience, intercourse, unknown ejaculation . . . Mom wants her tested for STD . . . consensual intercourse 16-year-old."  According to the records, it appears that [the victim] and/or the other individual told her doctor that [the victim] was at his office for testing because she had her "first" sexual encounter with a 16-year-old male.  This sexual encounter would have occurred after she was alleged to have been sexually assaulted by Appellant.  Appellant wanted to use this statement as a prior inconsistent statement to impeach the credibility of the [victim].

Trial Court Opinion, 9/1/15, at 3-4 (citations to record and footnote omitted).   The trial court stated several reasons for denying Appellant's motion, including its conclusion that admission of the statement would violate Pennsylvania's Rape Shield Law.  18 Pa.C.S.A. § 3104.

This Court recently summarized our standard of review for the admission of evidence of a victim's prior sexual conduct as follows:

A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused.

*Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa. Super. 2014) (citations omitted).

The Rape Shield Law reads as follows:

### § 3104. Evidence of victim's sexual conduct

**(a) General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104.

In **K.S.F.**, this Court further discussed the interplay between the purpose of the Rape Shield Law and the constitutional rights of the accused:

> Although the literal language of the Rape Shield Law would appear to bar a wide range of evidence, courts have interpreted the statute to yield to certain constitutional considerations implicating the rights of the accused. **See**, **e.g.**, **Commonwealth v. Riley**, 643 A.2d 1090, 1093 (Pa. Super. 1994) (right to cross-examine witnesses).
>
> Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. [**Commonwealth v. Black**, 487 A.2d 396, 401 (Pa. Super. 1985)]. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and whether there are alternative means of proving bias or motive or to challenge credibility." **Id.**

**K.S.F.**, 102 A.3d at 483-484.

Here, the trial court held the *in camera* hearing prior to trial and placed the following reasons on the record for denying Appellant's motion in limine:

> THE COURT: Okay. So, again, following the **Black** case, which you did cite, [the statement at issue] is clearly being offered to impeach [the victim's] credibility. In that regard it would be very weak for all the reasons that I stated. It is recorded in a medical record by a doctor purportedly as a quote. The doctor is not available to testify. Multiple interpretations that we could make of [the statement] and no way to sanitize it that would not also call into question [the victim's] character, specifically with regard to what the Rape Shield Law is trying to protect against. So the

probative value here would be outweighed by the prejudicial effect.

There are alternate means for you to attack [the victim's] credibility, specifically going after consistency and detail and memory and failure to promptly report and all the usual kinds of things that would be available in this type of a case.

N.T., 9/8/14, at 37-38.

The trial court expounded upon these reasons in its Pa.R.A.P. 1925(a) opinion:

Appellant argues that the statement is not hearsay as it is being offered only to impeach credibility. . . . However, the statement's relevance in this case comes from it being used to establish the truth of the matter asserted, specifically, that [the victim] had not had prior sexual contact with Appellant. The statement cannot be admitted merely to establish an inconsistency; the alleged inconsistency goes to the heart of the statement and must therefore be accepted as truthful to impeach [the victim's] credibility. As such, the statement remains inadmissible as hearsay pending consideration of exceptions to the hearsay rule. . . .

Hearsay may be admissible as a statement made for diagnosis or treatment. . . . The rationale for this exception to the prohibition against hearsay is that the [declarant], who is seeking treatment, has a strong motivation to speak truthfully; a motivation that is an adequate substitution for cross-examination and oath. *See* Pa.R.E. 803(4)[.] . . .

The medical records exception does not apply to the statement at issue, as the statement "first" sexual encounter was not made for purposes of medical treatment. Whether a recent sexual encounter was the first or one of many would not be relevant for purposes of diagnosing or treating a sexually transmitted disease (STD), just as treating a victim of sexual abuse, the name of the perpetrator would not be relevant to the patient's treatment.

The statement also fails to qualify for the business record exception under Pa.R.E. 803(6)[.] . . . As a business record, Appellant failed to meet the burden of putting on testimony that the statement attributed to the [victim] was recorded contemporaneously with the statement. Appellant's counsel stated that the doctor was unavailable and could not testify about whether or not the notes were made contemporaneously.

Also, the statement lacks inherent indicia of reliability. The statement is, in fact, hearsay within hearsay, as the doctor was not available at trial for cross-examination. An out-of-court declaration containing another out-of-court declaration is double hearsay. In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. This requirement is satisfied when each statement comes within an exception to the hearsay rule. "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statement conforms with an exception to the rule." Pa.R.E. 805.

In this case each part of the statement does not conform with an exception to the [hearsay] rule. The statement offered was not written by the [victim] but was attributed to [her] when entered into the medical record by another person. The other person, presumably the doctor, was unavailable to testify. The statement attributed to the [victim] was not placed in quotation by the author of the medical record. The specific details of how [the victim] ended up going to the hospital and who was present with [her] talking to the doctor are absent from the record. The person recording the statement may have assumed based on [the victim's] age and mental capacity along with the fact that her "mother" had brought her in for testing that she was engaging in her first sexual relationship with a boy and added that modifier himself. Alternatively, the statement may refer to the victim's first consensual sexual experience or her first sexual encounter with her boyfriend. In addition, the medical record attributes other relevant statements to an individual identified as [the victim's] mother. Without testimony subject to cross-examination from the recording source, the precise meaning of the statements as recorded cannot be

examined. [The trial c]ourt did not err in excluding the use of this statement at trial.

In addition, as the evidence relates to alleged prior sexual conduct of the victim, [the trial c]ourt must consider whether the Rape Shield Law, 18 Pa.C.S. § 3104, precludes the use of this evidence. . . . In this case, Appellant was accused of sexually assaulting the victim . . . approximately two years before she was taken to be tested for an STD because of a sexual relationship with a boyfriend. Therefore, consideration of the Rape Shield Law is appropriate.

\*\*\*

[The trial c]ourt held an in camera hearing on the Motion in Limine. Applying the **Black** test, [the trial c]ourt found that, under the particular circumstances as discussed above, specifically that the doctor who signed the medical record in question was not available as a witness, the prejudicial effect outweighed the probative value of the evidence. Again, the statement may have been made by the victim and/or her "mother" to a doctor when the [victim] was brought in to obtain testing for sexually transmitted diseases. [Without the doctor's testimony, the trial court could only assume that the statement was made directly to the doctor as opposed to another member of the treatment team, that the statement was a direct quote, that it was recorded contemporaneously and the that the word "first" was used by the victim, not the mother, and was made in reference to an initial consensual sexual encounter with a boyfriend.] As the [victim] had not yet disclosed the earlier rape by [Appellant], and ultimately made her initial disclosure to a school counselor, the [victim] likely did not feel comfortable disclosing to an unfamiliar person at a hospital with "mother" present.

Trial Court Opinion, 9/1/15, at 4-9 (citations and footnotes omitted).

We discern no abuse of discretion. As recognized by the trial court, the instant case is unlike the factual circumstances of **K.S.F**, wherein it was undisputed that the minor victim posted online her assertion that she was a

virgin, and wherein a panel of this Court concluded that such a statement "could not reasonably be understood to prejudice [the victim] by smearing her virtue and chastity, nor is it inflammatory." **K.S.F.**, 102 A.3d at 485 (footnote omitted).

Given the above discussion by the trial court, Appellant's claims that: 1) the statement was made by the victim; 2) it was not hearsay and/or was admissible under the exception for statements made for purposes of medical treatment or diagnosis, and 3) it was admissible despite the Rape Shield Law, are unavailing. **See** Appellant's Brief at 20-25. Moreover, Appellant's citation of the trial court's final sentence to argue its reasons for disallowing the statement were merely speculative, ignores the trial court's prior thoughtful analysis of Appellant's motion in limine. Finally, we note that at trial Appellant utilized different methods of impeaching the victim's testimony, including cross-examining her with inconsistent and contradictory statements she made to police and others, the victim's two-year delay in reporting the incident, and the direct testimony from the victim's biological mother, T.D., who claimed that the victim fabricated the charges because the victim was jealous and wanted T.D.'s boyfriend (Appellant) for herself. **See**, **e.g.**, N.T., 9/9/14, at 243 (testifying that she told police that the victim "has a thing" for Appellant).

Thus, for all of the reasons discussed above, we conclude that the trial court did not abuse its discretion by excluding the purported statement of

the victim in the medical record. Therefore, Appellant's first issue is without merit.

In his next claim, Appellant asserts that he is entitled to a new trial because the jury's verdict "was so contrary to the weight of the evidence that it shocks one's sense of justice." Appellant's Brief at 15. According to Appellant, the Commonwealth's case against him "was premised on testimony so clearly unreliable that justice requires its reversal." *Id.* We disagree.

Our Supreme Court recently summarized:

> A motion for new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, 744 A.2d 745 751-752 (Pa. 2000); ***Commonwealth v. Brown***, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ***Widmer***, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id.*** (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Brown***, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question*

> *of whether the verdict is against the weight of the evidence*. ***Brown***, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 354 A.2d 545 [(Pa. 1976)]. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Widmer***, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the record shows that the action is the result of partiality, prejudice, bias or ill-will.

***Widmer***, 744 A.2d at 753 *quoting* ***Coker v. S.M. Flickinger Co.***, 625 A.2d 1181, 1184-1185 (Pa. 1993).

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-1055 (Pa. 2013).

In explaining its decision to deny Appellant's weight challenge, the trial court summarized the pertinent trial testimony as follows:

[The victim] testified that Appellant raped her when she was 15. She testified that she was visiting her mother on a weekend in the summer. [T.D., the victim's] mother[,] left her in the care of Appellant, [T.D.'s] paramour, while [T.D.] went to the hospital to see a relative who had been taken to the emergency room. When [the victim] laid down on [T.D.'s] bed to sleep, and with her younger brother asleep on the floor next to her, Appellant, naked, laid on top of her and unbuttoned her pants. [The victim] testified that Appellant's penis touched her vagina on the inside. She said that the incident ended when Appellant heard a knocking on the door and left her to go to the bathroom. [The victim] said she got dressed and called her father to pick her up early. Afterwards, she washed the sheet because she had bled on it. Appellant, however, told [T.D.] that the bedding was washed because he had spilled ketchup on it. [The victim] testified that she didn't tell [T.D.] what happened because her mother would never have believed her. [The victim] testified that, since her rape, she hasn't seen [T.D.] or talked to her on the phone because [T.D.] did not believe that Appellant raped [the victim].

The Commonwealth produced two witnesses who corroborated details of [the victim's] testimony: [R.D.], [the victim's] father, and [T.M.], his live-in girlfriend. [T.M.] testified that [the victim] first told a school counselor about the rape. Then [the victim] came home from school and told [T.M.] that Appellant had raped her. [T.M.] called [R.D.] and said that [the victim] had something to tell him. [R.D.] then corroborated [T.M.'s] testimony, stating that [T.M.] called him one day and told him that [the victim] had something to tell him. He said that [the victim] told him Appellant had forced himself on her. [R.D.] called his local police department and was told that the Allegheny County Police Department investigates allegations of this nature. [Each of these witnesses also testified that the victim has cognitive delays or intellectual disabilities.] Detective Corrine Orchowski, who is assigned to the sexual assault unit of the Allegheny County Police Department, testified that, in her experience, it is fairly common for children to delay disclosure of sexual abuse.

Trial Court Opinion, 9/1/15, at 9-11 (citations to record and footnotes omitted).

Based upon the above summary, the trial court concluded that, "[u]nder the totality of the circumstances, the jury was within its discretion to conclude that Appellant sexually assaulted the [victim]." *Id.* at 11. We agree.

In support of his weight challenge, Appellant asserts that his convictions "cannot be sustained based on [the victim's] testimony which was contradictory with respect to almost every material fact and included a highly implausible description of events in which [Appellant] allegedly lay completely still on top of the [victim] throughout the entire assault." Appellant's Brief at 15. Appellant then cites various portions of the victim's testimony in which at different times during the police investigation she contradicted herself as to: 1) when the assault occurred as well as the day of the week and the time of day; 2) when T.D. left for the hospital and whether the victim's brother accompanied her; 3) whether the victim's youngest brother was present sleeping in the room when the assault occurred; 4) the manner in which the assault began and ended; 3) the actions of Appellant after the assault and whether the victim went home that

same day; and 5) who washed the soiled bedsheets after the assault. *See* Appellant's Brief at 27-33.[3]

Unfortunately for Appellant, these contentions focus exclusively upon conflicts within the testimony, which fall within the purview of the factfinder to resolve. Appellant cites no pertinent authority to suggest that such claims establish his assertion that the verdict is against the weight of the evidence. Thus, Appellant's second issue is devoid of merit.

Appellant's final claim pertains to the discretionary aspects of his sentence. Accordingly, we consider such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. 2013) (*en banc*) (citation omitted).

Prior to reaching the merits of a discretionary aspect of sentencing issue, this Court is required to conduct a four-part analysis.

_____

[3] Within his supporting argument, Appellant conflates the concepts of sufficiency and weight of the evidence and, in fact, asserts that "the trial court erred when it denied [his] post-sentence motion for judgment of acquittal." Appellant's Brief at 26. A claim that the verdict is against the weight of the evidence concedes its sufficiency. *See Widmer*, *supra*. The trial court treated Appellant claim as a weight challenge. We shall do the same.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). In this analysis, we must determine: 1) whether the present appeal is timely; 2) whether the issue raised on appeal was properly preserved at sentencing or in a post-sentence motion; 3) whether Appellant has filed a statement pursuant to Pa.R.A.P. 2119(f); and 4) whether Appellant has raised a substantial question that his sentence is not appropriate under the Sentencing Code. *Id.*

In the instant case, Appellant filed a timely notice of appeal, and properly preserved his claim in a post-sentence motion. Additionally, Appellant complied with Pa.R.A.P. 2119(f). *See* Appellant's Brief at 37. We must therefore determine whether Appellant raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine

- 16 -

whether a substantial question exists." ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012).

Within his Rule 2119(f) statement, Appellant asserts that a substantial question exists "because the trial court failed to place adequate reasons on the record to support the harsh [aggregate] sentence which it imposed on him, and failed to consider [his] rehabilitative needs . . . or his particular nature and characteristics as required by law." Appellant's Brief at 38.[4]

To the extent Appellant argues that the trial court failed to consider a multitude of mitigating factors, this does not rise to the level of a substantial question. ***Buterbaugh***, 91 A.3d at 1266. Moreover, it is well settled that, "[w]here pre-sentence reports exist, we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." ***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) *quoting* ***Commonwealth v. Devers***, 519 Pa. 88, 546 A.2d 12, 18 (1988).

_____

[4] Appellant asserts the trial court's complete failure to place reasons on the record for its sentencing choice renders his sentence "illegal." ***See*** Appellant's Brief at 38-39. Appellant cites no pertinent authority to support this claim and we will not consider it further.

- 17 -

However, Appellant's claim regarding the trial court's failure to place adequate reasons on the record does raise a substantial question. **See**, **e.g.**, **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013). Thus, we will address the merits of this claim.

This Court has stated:

> The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance, or indifference, and the overall effect and nature of the crime.

**Commonwealth v. Marts**, 889 A.2d 608, 613 (Pa. Super. 2005) (citations omitted).

Our review of the record refutes Appellant's claim. At sentencing, trial counsel first made several corrections to Appellant's pre-sentence report. **See** N.T., 12/1/14, at 3-4. The following exchange then occurred between the trial court and trial counsel:

[BY TRIAL COUNSEL:]

> With respect to sentencing, Your Honor, I would point out that although [Appellant] does have a prior conviction, he is prior record score of zero.

> He is a high school graduate. While these charges were pending, [Appellant] did have his first child, a daughter named [C].

> As laid out in the pre-sentence report, Your Honor, although briefly, [Appellant] has dealt with his share of obstacles. Growing up, he bounced around with different

foster homes; was the victim of abuse himself. Obviously his history is not an excuse, but it does shed some light on how he got here today.

Just to contextualize these prior convictions for indecent assault, at the time that occurred, 2010, [Appellant] was 19. The victim was 15, but looking at the criminal complaint in that case and also discussed in the pre-sentence report, the victim in that case told [Appellant] that she was 18.

THE COURT: Well, that's [Appellant's] version.

[TRIAL COUNSEL]: Correct. That is his version. But I believe - - I don't believe at any point that - - she was not of the age of consent, but she did not allege that it [was] not consensual. Traditional is the word [sic]. [Appellant] certainly is in need of treatment, rehabilitation. All I can say is that [Appellant] has told me that he looks forward to completing a period of state incarceration, complying with any treatment he has to comply with and eventually returning to society and returning to his daughter, a changed man.

Hopefully, he can be a positive influence in her life at some point down the road.

N.T., 12/1/14, at 4-5.

At this point, the trial court mentioned another correction to Appellant's pre-sentence report, indicating that the victim was not 16, but 15 when the assault occurred. *Id.* at 6. Trial counsel then requested that Appellant be sentenced to "five to ten years of state incarceration, which would be in the middle of the standard range of the lead charge of rape." *Id.* The trial court asked Appellant if there was anything he would like to say, Appellant responded, "I don't believe, Your Honor." *Id.* at 7.

The Commonwealth informed the trial court that the victim, T.M., and R.D., were present in the courtroom, and that the victim wrote a short victim impact letter that she would like the trial court to read. The trial court then inquired of the Commonwealth as to merger of any of the offenses, and stated:

> In light of [Appellant's] prior conduct of a sexual nature, in light of the position of trust the he was in with the victim in the case - - and when I say his prior conduct of a sexual nature, I also note, and at [Appellant's] young age, two similar sex offenses with a 15-year-old, I do believe that we have reason to be concerned that we are seeing at a young age a pattern of behavior here.
>
> Also I believe that [Appellant], in this case preyed on somebody [from] a positon of trust, somebody he felt that he could manipulate and who he could also discredit.
>
> I do think a lengthy period of incarceration would be appropriate, particularly a lengthy tail, in light of the fact that we can't really assess risk in this situation. It is difficult for me to determine when [Appellant] might be appropriate for release, so in light of all of that, at Count 1 [(rape)], I'll impose a sentence of 66 months to 180 months, and Count 2 [(sexual assault)], merges for purposes of sentencing.
>
> At Count 3, the statutory sexual assault, a consecutive period of incarceration of 14 to 36 months.
>
> And at Count 4, the corruption offense - - that one goes more specifically to the relationship between [Appellant] and the victim.
>
> Count 1 goes specifically to the nature of the act.
>
> Count 3 to the age of the victim.
>
> And Count 4, specifically in my mind, to the relationship with the victim, so at that count, a consecutive period of incarceration of 9 to 36 months with no further penalty at Count 5, the indecent assault.

> I believe the act itself would be represented by the more serious offenses above.

N.T., 12/1/14, at 8-9.

Given the above comments, we conclude that the sentencing court did not commit a manifest abuse of discretion when sentencing Appellant and provided adequate reasons for its sentencing choice. "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and the character of the offender." **Commonwealth v. Crump**, 995 A.2d 1280, 1283 (Pa. Super. 2010). It is clear from the record that the trial court was informed of Appellant's character, yet chose to focus on the circumstances of each count to impose consecutive sentences, in addition to the sentence imposed for Appellant's rape conviction. As the trial court further stated in its Pa.R.A.P. 1925(a) opinion:

> In this case, this [c]ourt considered that Appellant preyed on a child with intellectual challenges. He chose a victim whom he believed could be manipulated or discredited. Furthermore, the child had been left in his care. [Appellant's] history indicated two similar sex offenses with a fifteen year old girl. Given his ongoing predatory behavior, this Court considered the community's need to be protected from him as paramount. Thus, this [c]ourt did not err in imposing a sentence of confinement of 89 months (7 years, 5 months) to 252 months (21 years).

Trial Court Opinion, 9/1/15, at 12-13.

When sentencing a defendant, "the trial court is permitted to consider the seriousness of the offense and its impact on the community." **Marts**, 889 A.2d at 615 (citation omitted). In essence, Appellant asks this Court to reweigh the above considerations and substitute our judgment for that of the sentencing court. This we will not do. **See id.**

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2016