J. A15028/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ISAIAH ANDERSON, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1425 EDA 2015 |

Appeal from the Judgment of Sentence February 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000624-2012
CP-51-CR-0004336-2013

BEFORE: FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 12, 2016**

Appellant, Isaiah Anderson, appeals from the Judgment of Sentence entered by the Philadelphia County Court of Common Pleas following his conviction by a jury of Rape of a Child and related offenses. After careful review, we affirm on the basis of the trial court's Opinion.

We adopt the facts as set forth by the trial court. *See* Trial Court Opinion, filed 11/23/15, at 2-7. In summary, on July 17, 2011, A.M., then 12 years old, went to her pastor's house before church. Appellant, A.M.'s pastor's nephew, raped A.M. multiple times in a secluded bathroom in the house. Appellant covered A.M.'s mouth during his assaults and warned her not to tell anyone what had happened. A.M. reported the assault to police on September 29, 2011, and Appellant was charged and arrested. On

November 19, 2014, a jury convicted Appellant of the sexual offenses, and the trial court sentenced him accordingly.

Appellant filed a Notice of Appeal on May 8, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues on appeal:

1. Did the trial court commit reversible error by denying [A]ppellant's Motion To Permit Cross-Examination And Introduction Of Evidence Concerning Credibility And Relevant Sexual Conduct With A Third Party?

2. Did the trial court commit reversible error by admitting into evidence, over [A]ppellant's objection, [A]ppellant's unduly prejudicial and ambiguous pre–trial bizarre and quasi-religious purported confession letter to a different judge?

3. Did the trial court commit reversible error when it denied [A]ppellant's request that the complainant be referred to only as "complainant" or "person" or "*alleged* victim" instead of "victim."

Appellant's Brief at 4 (emphasis in original).

Appellant first challenges the trial court's decision to preclude cross-examination of the victim regarding her past sexual history and sexually explicit communications she may have written in a social media forum to a boyfriend days after Appellant had raped her.

"A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion." ***Commonwealth v. K.S.F.***, 102 A.3d 480, 483 (Pa. Super. 2014) (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is

overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused." *Id*.

The Rape Shield Law states as follows:

**§ 3104.  Evidence of victim's sexual conduct**

**(a) General rule.—**Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.—**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial.  If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104.

In ***K.S.F.***, this Court further discussed the interplay between the purpose of the Rape Shield Law and the constitutional rights of the accused:

Although the literal language of the Rape Shield Law would appear to bar a wide range of evidence, courts have interpreted the statute to yield to certain constitutional considerations implicating the rights of the accused.  ***See***, ***e.g.***, ***Commonwealth v. Riley***, 643 A.2d 1090, 1093 (Pa. Super. 1994) (right to cross-examine witnesses).

Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law.

> [***Commonwealth v. Black***, 487 A.2d 396, 401 (Pa. Super. 1985)]. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and whether there are alternative means of proving bias or motive or to challenge credibility." ***Id.***

***K.S.F.***, ***supra*** at 483-84.

The Honorable Timika R. Lane, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's challenge to the preclusion of evidence. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. ***See*** Trial Court Opinion, filed 11/23/15, at 7-14 (concluding Appellant failed to provide adequate and specific proffer of relevant evidence and Appellant provided only vague and conjectural relevance arguments). ***See also*** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 412.06 *et seq.* (2016 ed. LexisNexis Matthew Bender).

Appellant next challenges the trial court's decision to admit at trial his inculpatory statements made in a letter which Appellant sent to another judge.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Tyson***, 119 A.3d 353, 357 (Pa.

Super. 2015) (quotation and citation omitted). "[A]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence or the record." *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa. Super. 2001) (citation omitted).

After a careful review of the Appellant's argument and the record on this issue, we affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion, filed 11/23/15, at 14-16 (concluding it properly admitted the letter under Pa.R.E. 403, and as a party's statement under Pa.R.E. 803(25)). *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 403.05 *et seq.*, § 803.25[9][a] (2016 ed. LexisNexis Matthew Bender).

Appellant next challenges the trial court's decision to deny his request to preclude the parties from referring to A.M. as the "victim."

This issue is waived. As the Commonwealth notes, Appellant failed to cite any controlling legal authority that supports his argument as required under Pa.R.A.P. 2119(a). *See* Appellee's Brief at 21 n.6 (citing *Commonwealth v. Price*, 876 A.2d 988, 996 (Pa. Super. 2005)). In addition, Appellant failed to cite any references in the record to support his claim. *See* Pa.R.A.P. 2119(c). Because Appellant failed to comply with our briefing rules, this issue is waived. *See Commonwealth v. Lemon*, 804

A.2d 34, 38 n.6 (Pa. Super. 2002) (waiving issue on appeal for failure to cite to pertinent authority).

The parties are instructed to attach a copy of the trial court's Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2016

FILED

NOV 2 3 2015

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA :     CP-51-CR-0000624-2012
:     CP-51-CR-0004336-2013
:
v. :
:
ISAIAH ANDERSON :     1425 EDA 2015

OPINION

LANE, J.                                                    November 23, 2015

## OVERVIEW AND PROCEDURAL HISTORY

On December 26, 2012, Isaiah Anderson (herein "Defendant") was arrested and later charged for the alleged sexual assault of Complainant (herein "A.M."). On November 17, 2014, the trial court heard arguments from both sides denied defense counsel's motion to pierce the Rape Shield Statute. On November 19, 2014, a jury convicted Defendant of charges arising from two consolidated cases. On Docket Number CP-51-CR-0000624-2012, the jury convicted Defendant of Rape of a Child (18 Pa.C.S § 3121), Aggravated Indecent Assault of a Child (18 Pa.C.S § 3125), Unlawful Contact with Minor – Sexual Offenses (18 Pa.C.S § 6318), Sexual Assault (18 Pa.C.S § 3124.1), Corruption of A Minor (18 Pa.C.S § 6301), and Indecent Assault Person Less than 13 Years of Age (18 Pa.C.S § 3126). On Docket Number CP-51-CR-0004336-2013, the jury convicted Defendant of Aggravated Assault (18 Pa.C.S § 2702) and two counts of Resisting Arrest (18 Pa.C.S § 5104).

Defendant was sentenced of February 20, 1015. On Docket Number CP-51-CR-0000624-2012, Defendant was sentenced to an aggregate of 12.5-25 years of incarceration at state prison.

1

On Docket Number CP-51-CR-0004336-2013, Defendant was sentenced to an aggregate sentence of 1-2 years to run consecutive to CP-51-CR-, followed by 4 years probation.

On May 8, 2015, Defendant filed a timely Notice of. On June 1, 2015, Defendant filed a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Defendant appeals his conviction on charges from docket numbers CP-51-CR-0000624-2012 and CP-51-CR-0004336-2013 on the grounds that Defendant was denied a fair trial because this Honorable Court precluded him from presenting the only lawfully permissible defense he had: 1.) Defendant was denied his lawful right to effectively cross-examine the complainant, the Commonwealth's expert, and the complainant's mother regarding complainant's prior sexual activity with a boyfriend and sexually explicit messages complainant sent between July 20, 2011 and December 20, 2011 via Mocospace, a mobile social network, and bearing on the complainant's credibility, which infringed upon Defendant's right to confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution; 2.) Defendant was denied a fair trial when the Honorable Court allowed into evidence an unduly prejudicial and outrageously inflammatory, bizarre, and quasi-religious/Moorish purported "confession," written by Defendant to another judge, in violation of general fundamental fairness and Pa.R.E. 403 in particular; and 3.) Defendant was denied a fair trial when the Honorable Court refused counsel's request that the complainant be referred to only as the "complainant" or "person" (or the "alleged victim") instead of "victim" as the Commonwealth preferred and therefore requested.

## FACTS

On July 17, 2011, A.M.'s mother, (herein "Dawnecia"), dropped off her off at Mr. Wilmeck's (herein "Wilmeck"), residence on Poplar Street, Philadelphia, to attend a local church

2

where Wilmeck was a pastor. N.T. 11/17/2014 at 17, 133-34. At the time, A.M. was 12-years-old. *Id.* at 132. She knew Wilmeck as her teacher as well as pastor. *Id.* at 133. During a parent-teacher conference, Wilmeck asked Dawnecia if A.M. could attend Wilmeck's church because of A.M.'s interest in the choir. *Id.* at 165-66. After a few months, Dawnecia agreed to let A.M. attend Wilmeck's church. *Id.* 166. When A.M. arrived at the Wilmeck residence on July 17, 2011, Wilmeck gave A.M. $5.00 and asked her to run across the street to buy him an undershirt. *Id.* at 135. When A.M. returned, Wilmeck was already upstairs and A.M. did not feel comfortable bringing him the shirt. *Id.* at 136.

When A.M. saw Defendant sitting in the living room of the house, she asked him to take the shirt up to Wilmeck. N.T. 11/17/2014 at 135-36. A.M. knew Defendant from a block-party that they both attended on Wilmeck's block. *Id.* at 136. Defendant spoke with A.M. for a short time about school, friends, and television before telling A.M. that she had, "a body like a model." *Id.* at 137. Defendant noticed A.M. had different colored nail-polish on her nails and asked A.M. if she was bi-sexual, which A.M. did not really understand at the time. *Id.* at 137-38. Defendant then asked if A.M. wanted to see a recently remodeled bathroom on the first floor of the house. *Id.* at 136. Meanwhile, Wilmeck, his wife, and son were all upstairs preparing to go to church while listening to loud church-music. *Id.* at 138.

While in the remodeled bathroom, Defendant asked A.M. if she liked the bathroom, bent A.M. over the sink with her facing the mirror, stood behind her, pulled her dress up, and penetrated her vagina with his penis. *Id.* at 139. A.M. told Defendant to stop and made noise before Defendant told A.M. she was too loud and covered her mouth with his hand. *Id.* at 141. Defendant then put two fingers in A.M.'s mouth, preventing A.M. from speaking out. *Id.* After

3

a couple minutes, A.M. saw Defendant ejaculate on the floor and walk out of the bathroom. *Id.* at 141-42. A.M. froze up and did not tell anyone in the house about what happened. *Id.* at 142.

Soon afterwards, Defendant started talking to A.M. again and put her on his lap while he sat on a couch on the first floor and attempted to kiss her, which A.M. pulled away from. *Id.* Upon A.M. rebuffing the advances, the Defendant put A.M. up against the dryer located in front of the bathroom and inserted two fingers into A.M.'s vagina. *Id.* at 142, 144. Only Defendant and A.M. were on the first floor throughout the incident. *Id.* at 142. Defendant next pulled A.M. into the first floor bathroom a second time, bent her over the sink facing the mirror, put his hand over her mouth, pulled her hair, and penetrated A.M.'s vagina with his penis a second time. *Id.* at 142, 144-45.

Once Defendant and A.M. left the bathroom the second time, Defendant told A.M. not to tell anybody what happened, and that it is a secret between them. *Id.* at 145-46. When Wilmeck's son (herein "Raymond") came down to get a bowl of cereal from the kitchen, A.M. said nothing because she was scared, and Raymond returned upstairs. *Id.* Shortly after, Raymond and A.M. went to church together as Wilmeck was unable to attend due to health reasons. *Id.* at 146-47. However, A.M. told the police that the pastor took her to church that day. *Id.* at 185-86. About 20 minutes into church, A.M. began crying. *Id.* at 146-47. She explained that her back was bothering her because of her scoliosis. *Id.* A.M. stopped attending church afterwards. *Id.* at 148.

A.M. told Shadiya Samuels, a friend, (herein "Samuels"), soon after, about what Defendant did to her because something similar had happened to Samuels' sister. *Id.* at 148. Another friend, (herein "Clarissa"), encouraged A.M. to visit Wilmeck, whose health was failing. *Id.* When A.M. and Clarissa visited, Defendant answered the door and hugged A.M. *Id.* at 149.

4

Clarissa asked A.M. about the hug and A.M. then told Clarissa about the sexual assault. *Id.* A.M. asked her friends to keep the information about Defendant to themselves because A.M. didn't want anyone else to know. *Id.* However, A.M.'s friends told another friend, Dominique. *Id.*

On September 28, 2011, A.M. told her mother what happened regarding Defendant. *Id.* at 150, 171. Complainant's mother noticed that A.M. was no longer attending church and not wearing the dress that A.M. wore the day of the incident. *Id.* at 150. After arguing back and forth with her mother, A.M. broke down crying and told her mother that Defendant sexually assaulted her. *Id.* Complainant's mother also found A.M.'s dress with a pair of underwear balled up in a plastic bag in the back of A.M.'s closet, which she turned over to Detective Terry at the Special Victims Unit. *Id.* at 168, 175, 177. Forensic Scientist Deanna Zarzecki tested the dress for the presence biological evidence but found none. N.T. 11/18/2014 at 21.

On September 29, 2011, A.M. went to the police station where Officer Woodhouse interviewed her, during which A.M. identified a picture of Defendant as the person who sexually assaulted her. N.T. 11/17/2014 at 150-51, 180, 201. A.M. also went to the Children's Hospital of Philadelphia to see a doctor there, and on October 5, 2011, she spoke with Jodie Lashley from the Philadelphia Children's Alliance for a forensic interview. *Id.* at 150-51, 172, 196; N.T. 11/18/2014 at 10.

Two or three years after the incident, A.M. told her grandfather about how Defendant sexually assaulted her, resulting in her grandfather not speaking to A.M. for over a year. N.T. 11/17/2014 at 152, 163. On January 11, 2012, A.M. testified at a preliminary hearing about the sexual assault. *Id.* at 162. At the preliminary hearing, A.M. testified that she only told her

mother and one friend about the incident. N.T. 11/17/2014 at 162-63. Police found no physical evidence linking the Defendant to A.M. and the allegations. *Id.* at 202.

On October 22, 2012, Defendant failed to appear for his scheduled trial and Judge Erdos issued a bench warrant to apprehend Defendant and make a determination as to whether the absence was willful. N.T. 11/17/2014 at 9-10; N.T. 11/18/2014 at 22. Sometime in October 2012, Bill Argyriou, (herein "Argyriou"), and investigator Thompson, (herein "Thompson"), agents of the First Judicial Direct Warrant Unit, went to 6060 Crescentville Road, Apartment EB-10, Philadelphia attempting to locate Defendant. N.T. 11/18/2014 at 24-25, 45, 46, 87. At that time, Argyriou spoke with the Defendant's girlfriend, Leatrice Downing, (herein "Downing"). *Id.* at 25. Downing told investigators that Defendant did not live there anymore and had moved to North Carolina; yet, Argyriou observed the Defendant's mail, an older man's clothing, and tools inside the residence. *Id.* at 25, 46-47.

On December 26, 2012, Argyriou, Thompson, and three other investigators returned to 6060 Crescentville Rd. Philadelphia, at approximately 4:00 a.m., and began knocking on the door to apartment E3-10. *Id.* at 25-26, 38, 87. No one answered the door; however, Argyriou noticed additional bolts and reinforcements on the door that were not present in October 2012. *Id.* at 26. Argyriou's partner thought he heard a noise from inside the residence so they waited 20 to 25 minutes while they continued to knock. *Id.* Through a crack in the door, Argyriou noticed that someone chained the front door from the inside, which inferred that someone was inside the residence and not answering the door. *Id.* An investigator from the warrant unit observed a male on the balcony outside, and at that time Argyriou asked permission to breach the residence. *Id.* at 27.

6

The investigators forcibly opened the front door by striking the door with a battering ram approximately 30 times, entered the residence, cleared the living room and a bedroom, and proceeded to the last room. *Id.* at 27, 29. Investigators found the room locked and began knocking, but no one answered. *Id.* at 27. Argyriou and the other officers breached the door and found Defendant and Downing, with Defendant fully dressed lying above the covers with his eyes closed, appearing to be asleep. *Id.* at 27, 32. The investigators approached Defendant, who turned onto his stomach. *Id.* at 32. When four investigators approached the Defendant and attempted to grab him, the Defendant turned over and began throwing closed-fist punches and kicks towards the investigators. *Id.* Defendant struck Argyriou in the hand and struck Thompson in the chest. *Id.* at 43. Thompson struck Defendant in the stomach and then in the face to force compliance. *Id.* at 52. Ultimately, the officers placed Defendant under arrest. *Id.* at 34. Afterwards, medical personnel treated Defendant for a fractured left-eye socket. *Id.* at 40, 43.

On January 4, 2013, Judge Erdos found Defendant's absence to be willful and Defendant guilty of contempt of Court. *Id.* at 22-23. On May 15, 2013, Judge Woelpper's staff received a letter written by Defendant in which Defendant asks Judge Woelpper to forgive him for his past dishonor. *Id.* at 71-72. The letter is somewhat unclear but the Defendant wrote that, "his person accepts responsibility, being guilty of all facts." *Id.* at 72-75.

## DISCUSSION

I. **THE TRIAL COURT PROPERLY PRECLUDED DEFENDANT FROM CROSS-EXAMINATION REGARDING THE COMPLAINANT'S PAST SEXUAL INTERCOURSE AND SEXUALLY EXPLICIT COMMUNICATIONS.**

Defendant asserts that the trial court improperly denied Defendant from presenting the only lawfully permissible defense he had by precluding Defendant from cross-examining the

7

complainant, the complainant's mother, and the commonwealth's expert regarding the complainant's past sexual history and sexually explicit communications. Defendant sought to offer evidence that (1) the complainant had past sexual intercourse with a boy that she liked, and (2) that the complainant, may have, written and sent sexually explicit communication on Mocospace.com to a boyfriend between July 20, 2011 and December 1, 2011. N.T. 11/17/2014 at 13-16. Defendant argued that both the prior sexual intercourse and sexually explicit communication sent over Mocospace bear directly on the complainant's credibility, as just three days after the alleged sexual assault the complainant started sending sexually explicit communications to a boyfriend over Mocospace.com. *Id.* at 16, 19. Defendant avers that the complainant began dating this boyfriend a month before the complainant made her allegations of sexual assault, which was on July 17, 2011. *Id.* at 17, 25.

Generally, a party has the right to show an adverse witness' bias or interest through cross-examination. Commonwealth v. Black, 487 A.2d 396, 399 (Pa. Super. 1985). However, Pennsylvania's Rape Shield Law operates to stop a sexual assault trial from becoming a drawn-out attack on the complainant's reputation for chastity. Commonwealth v. Holder, 815 A.2d 1115, 1118 (Pa. Super. 2003). To that end, Pennsylvania's Rape Shield Law states in pertinent part:

> Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter[.]

18 Pa. C.S.A. § 3104(a). The Rape Shield Law reflects a legislative recognition of the "minimal probative value of a complainant's sexual history" in a sexual assault trial and prohibits the defense from presenting a stream of witnesses testifying to the "sexual propensities" of the complainant. Commonwealth v. Jones, 826 A.2d 900, 909 (Pa. Super. 2003). Instead, a sexual

assault trial should focus on the relevant issues including determining whether the proposed evidence was relevant to show bias or motive or to attack credibility, whether the probative value of the evidence outweighed its prejudicial effect, and whether there were alternative means of proving bias or motive or to challenge credibility. Black, 487 A.2d at 401.

Rape Shield will bow to a Defendant's confrontation rights when a specific proffer shows that the evidence is relevant, more probative than prejudicial, and not cumulative of evidence available that doesn't implicate Rape Shield. Commonwealth v. Nieves, 582 A.2d 341, 347 (Pa. Super. 1990). The absence of an adequate and specific proffer regarding the evidence otherwise inadmissible under Rape Shield is fatal to challenges to Rape Shield protections. *Id. See also* Commonwealth v. Troy, 552 A.2d 992 (1989) (holding that vague and conjectural proffer that evidence aided alibi defense did not warrant remand for further inquiry under Black); Commonwealth v. Erb, 547 A.2d 436 (1998) (holding that Rape Shield was not pierced, when proffered evidence concerning excerpt from complainant's diary describing her sexual interest in a boyfriend was offered to establish motive to make false charges because her father interfered with his daughter's relationship, because relevance, probative value, and necessity not established).

In the instant matter, Defendant's proffer is insufficient to warrant further consideration. Defendant argues that the evidence of A.M.'s prior sexual history and sexually explicit communication on Mocospace are relevant to A.M.'s credibility. N.T. 11/17/14 at 16. Defendant incorrectly supports his argument by citing to Killen. In Killen, the statements defendant sought to admit were complainant's sexually provocative statements flirting with a firefighter during complainant's ambulance ride to the emergency room, and jovial and flirtatious statements to the emergency room physician, *immediately* after the alleged rape.

9

Commonwealth v. Killen, 680 A.2d 851, 852-53 (1996). The Court ruled that those statements were admissible for the purpose of impeaching the complainant's credibility by illustrating her state of mind "immediately after the alleged attack." Killen, 680 A.2d at 854. In the instant matter, the statements at issue stretch from July 20, 2011 to December 23, 2011, and cannot be characterized as occurring immediately after the alleged rape on July 17, 2011. N.T. 11/17/14 at 13, 17.

Defendant also incorrectly categorized the statements in Killen as Facebook posts when they were the complainant's in-person statements to a firefighter and the emergency room physician. N.T. 11/17/14 at 16; Killen, 680 A.2d at 852-53. In Killen, the court said that the Rape Shield Law is not meant to exclude a victim's statements that "are part of and relevant to the ongoing episode in which the alleged criminal activity takes place." Killen, 680 A.2d at 854. In the instant matter, the sexually explicit communications are not part of or relevant to the ongoing episode of alleged criminal activity as in Killen. In contrast to Killen, the instant complainant's sexually explicit communications began days after the alleged rape. N.T. 11/17/14 at 15. Further, Mocospace communications were not verbal statements. Defendant alleges that the complainant's sexually explicit communications begin on July 20, 2011; yet the earliest sexually explicit statement Defendant noted before the trial court was dated July 27, 2011 further reducing any relevance. *Id.* at 17-28.

Defendant next argues that the statement by A.M. on September 3, 2011 to a Children's Hospital of Philadelphia doctor that "she has had sexual intercourse once before with another boy that she liked. Mom just found out about this" are relevant to A.M.'s credibility and motive because A.M. may have lied about being sexually assaulted by Defendant in order to hide her

consensual sexual relationship with this boy. N.T. 11/17/14 at 29. This argument is insufficient to pierce the Rape Shield Statute.

The absence of an adequate and specific proffer regarding the relevance of evidence otherwise inadmissible under Rape Shield is fatal to challenges to Rape Shield protections. Commonwealth v. Nieves, 582 A.2d 341, 347. In the instant matter, there is only vague and conjectural relevance for A.M.'s past sexual history. Defendant argues that in an effort to keep her "ongoing sexual relationship" with a boyfriend from her mother, A.M. concocted a story about Defendant sexually assaulting her. N.T. 11/17/14 at 29-30. Defendant cites Black where the court allowed evidence of prior sexual conduct, not to show moral turpitude, but to reveal a *specific* bias. Commonwealth v. Black, 487 A.2d 396, 399 (Pa. Super. 1985). In Black, defendant argued that complainant, his daughter, held bias against him because complainant had an ongoing sexual relationship with her brother and complainant was angry about defendant kicking her brother out of the house. *Id.* at 398. The Court held that not allowing defendant to cross-examine complainant regarding her bias against defendant due to this alleged incestuous relationship violated defendant's Confrontation rights. *Id.* at 401. However, Black involved evidence meant, "to reveal a *specific* bias against and hostility toward" defendant. *Id.* at 398 (emphasis added). In the instant matter, there is no *specific* bias to reveal, only conjectural bias. Black involved the specific bias between a father and daughter due to an ongoing incestuous relationship while the instant matter involves Defendant and Complainant who had met just once before the sexual assault. N.T. 11/17/2014 at 136. Black held that, "prohibiting evidence that logically demonstrates a witness' bias, interest or prejudice or which properly attacks the witness' credibility," violates the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Black, 487 A.2d at 401-02. The instant evidence

11

of prior sexual history demonstrates neither logical nor specific bias, only conjectural bias. Defendant failed to articulate meaningful factual support for his argument that Complainant concocted her sexual assault to hide a consensual sexual relationship with a boyfriend.

Defendant then proffers that the probative value of complainant's prior sexual history and sexually explicit communications are more probative than prejudicial to A.M. Defendant claims that any potential embarrassment to A.M. through admission of her prior sexual history and sexually explicit communications is outweighed by the probative value of the proposed evidence.

The purpose of the Rape Shield Law is to prevent irrelevant and abusive inquiries into the complainant's chastity and to focus the trial on the culpability of the accused. Commonwealth v. K.S.F., 102 A.3d 480, 484 (Pa. Super. 2014). The trial court must determine whether the evidence has sufficient probative value that outweighs its prejudicial effect. Black, 487 A.2d at 401. Statements that do not implicate complainant's reputation for chastity would not be more prejudicial than probative. Commonwealth v. Northrip, 945 A.2d 198, 205 (Pa. Super. 2008).

In K.S.F., the court analyzed the probative value versus prejudicial effect of complainant's Facebook post that "she had never had sex in her life," made after complainant claimed defendant, her step-father, raped her. K.S.F., 102 A.3d at 482. In finding the evidence more probative than prejudicial the court reasoned that the complainant's statement that she was a virgin could not reasonably be construed to prejudice her "reputation for virtue and chastity," and that the statement had significant probative value in reducing the complainant's credibility in her claim that defendant raped her. Id. at 484. In the instant matter, both A.M.'s prior sexual history and sexually explicit communications create significant prejudice to her. A.M. is now 16-17 years of age and was 12-13 at the time of the communications. N.T. 11/17/14 at 46, 48. Instantly, A.M.'s communications are virtually opposite to that in K.S.F. where the witness

12

posted that she was a virgin on social media. A.M.'s sexually explicit communications with a boyfriend include: "I'm a make it hurt bad and when I'm done fucking your booty hole, I'm a lick your booty cream off," N.T. 11/17/14 at 20; "Mmm. Eat with us both naked and me fighting for that big dick." *Id.* at 23; "Make this pussy cry for daddy," *Id.*; and "I'm a put my dick inside your booty hole," *Id.* at 24. Having these Mocospace.com communications admitted into evidence would serve to shame and humiliate complainant and would significantly prejudice the A.M.'s reputation for chastity. These sorts of statements are exactly the type that the Rape Shield Law seeks to eliminate from sexual assault trials. Additionally, evidence that A.M. had sexual intercourse with a boy she liked would further serve to humiliate her. The probative value of each piece of evidence is outweighed by prejudice to complainant. There is only conjectural probative value to each piece of evidence yet very real prejudice.

The Black Court also requires a determination of whether there are any alternate means to impeach the complainant's credibility. In Weber, the court evaluated the admissibility of evidence that the complainant was pregnant and planned to have an abortion, under Rape Shield. Commonwealth v. Weber, 675 A.2d 295, 302 (Pa. Super. 1996). The Court found that although there was substantial evidence at trial to impeach complainant's credibility, none of the evidence showed the complainant's specific motive to avoid a beating at the hands of her father as the evidence in question did. *Id.* Arguably, in the instant matter, Defendant has no way of showing a motive to fabricate the sexual assault without the complainant's prior sexual history and sexually explicit communications. Even though Defendant was able to cross-examine A.M. regarding an inconsistency, that arguably only impeaches credibility and does not speak to motive and bias. N.T 11/17/14 at 161-63.

13

In analyzing the evidence prohibited by Rape Shield, the court must balance the Black factors. K.S.F., 102 A.3d at 486. Upon balance, the evidence of complainant's sexually explicit Mocospace communications and past sexual intercourse failed to reach the requisite standard for admission. Both pieces of evidence have only conjectural relevance, are more prejudicial than probative, even though there are no alternate means to show motive to fabricate the accusations. Therefore, the trial judge correctly ruled that Rape Shield was not pierced by Defendant's proffer.

## II. THE TRIAL COURT DID NOT ERR IN ADMITTING DEFENDANT'S LETTER TO JUDGE WOELPPER INTO EVIDENCE.

Defendant next argues that the trial court denied Defendant a fair trial by allowing into evidence a letter including a confession written by Defendant to another judge. Specifically, that admission of the confession violated general fundamental fairness and Pa.R.E. 403 in particular. These claims are without merit. Defendant's signed and notarized letter to Judge Woelpper states in part:

> I seek to settle this matter immediately for my person. My person accepts the responsibility; being guilty of all facts. In addition, reparations are in order. I have established as material fact, the Police Department Warrant Unit has injured my vessel, while I attempted to establish peace with them in their duties. For that cause, I have accused them and are adding them as third party defendants in this hearing. I, Isaiah Anderson-El will become the third party plaintiff [. . .] In addition, I have obtained a lawyer who is in place to represent my person in accordance to the rules of M.T.S. of A. I have done this as a gesture to work in harmony with your system of procedure. If the charges are not dismissed, my person is willing to accept the responsibility of the charges, which I will return them to your Court. An order of check, money, or the issuance of credit are all proper ways of restoring the proper balance in entry to the first position.

N.T. 11/17/14 at 99-100, 105.

Evidence is relevant when it "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."

14

Pa.R.E. 401. Relevant evidence is admissible unless otherwise provided by law. Pa.R.E. 402. Irrelevant evidence is inadmissible. *Id.*

Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403. Unfair prejudice is defined as a tendency to suggest a decision made on an unfair basis or that distracts the jury from its duty to weigh the evidence impartially. Pa.R.E. 403 cmt. "Evidence will not be prohibited merely because it is harmful to the defendant." Commonwealth v. Page, 965 A.2d 1212, 1220 (Pa. Super. 2009) (quoting Commonwealth v. Dillon, 925 A.2d 131, 141 (2007)). Only evidence so prejudicial that "would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case," is prohibited. Commonwealth v. Owens, 929 A.2d 1187, 1191 (Pa. Super. 2007) (citing Commonwealth v. Broaster, 863 A.2d 588, 592 (Pa. Super. 2004)). Further, an opposing party's own statement is admissible as an exception against the rule against hearsay. Pa.R.E 803(25).

In the case at bar, Defendant's letter meets the test for relevance. Defendant's statements that, "My person accepts the responsibility; being guilty of all facts," and "If the charges are not dismissed, my person is willing to accept the responsibility of the charges[,]" have a tendency to make Defendant's guilt more probable than without the evidence. N.T. 11/17/14 at 99-100. Defendant's confession-letter has substantial probative value in proving that Defendant acknowledges his own guilt, at least regarding the resisting arrest charge. The evidence is harmful to Defendant but not so harmful as to inflame the minds' of jurors in making their decision. Defendant voluntarily wrote the letter without any prompting. N.T. 11/18/14 at 103. Commonwealth read the letter into evidence in its entirety, reducing the possibility that the jury

would take Defendant's words out of context. *Id*. at 72-75. The confession-letter is also admissible as an opposing party's statement as Defendant wrote and signed the letter and Commonwealth is offering the statement against Defendant. Therefore, the trial court did not err in admitting Defendant's voluntarily written letter to the Court into evidence.

### III. THE TRIAL COURT DID NOT ERR IN REFUSING DEFENDANT'S REQUEST FOR A.M. TO ONLY BE REFERRED TO AS "COMPLAINANT," "PERSON," OR "ALLEGED VICTIM" INSTEAD OF "VICTIM."

Finally, Defendant argues that the trial court erred in refusing counsel's request that the complainant be referred to only as the "complainant," "person," or the "alleged victim" instead of "victim." This claim is meritless.

The finder of fact is free to believe or disbelieve the testimony of Commonwealth witnesses. Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 20009) (citing Commonwealth v. Griscavage, 517 A.2d 1256 (1986)). The finder of fact makes credibility determinations and "may believe all, part, or none of a witness's testimony." Commonwealth v. Lee, 956 A.2d 1024, 1029 (Pa. Super. 2008). In addition, § 3101 defines complainant as, "[a]n alleged victim of a crime under this chapter." 18 Pa. C.S.A. § 3101.

The finder of fact was charged with assessing A.M.'s credibility and determining whether she was in fact a victim. In making that determination, the jury was not bound by the opening and closing arguments Commonwealth made referring to A.M. as a victim. The definition of complainant in the Sexual Offenses section of the Pennsylvania Statutes and Consolidated Statutes even defines complainant as an alleged victim. 18 Pa.C.S.A § 3101. The trial corut additionally instructed the jury that "argument does not constitute evidence." N.T. 11/19/14 at 8. Therefore, the trial court did not err in refusing Defendant's request that A.M. be referred to as

16

"complainant," "alleged victim," or "person." The jury was free to make their own determination as to whether A.M. was a victim.

## CONCLUSION

After review of the applicable statutes, testimony, and case law, the trial court did not err in denying Defendant's motion to pierce the Rape Shield Statute, admit into evidence Defendant's letter to the Court, and allow the Commonwealth refer Complainant as the "victim". Accordingly, the trial court's judgment of conviction should be affirmed.

BY THE COURT:

_____ J.

17

## IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION—CRIMINAL SECTION

COMMONWEALTH OF
PENNSYLVANIA

        vs.

ISAIAH ANDERSON

    :
    :
    :
    :
    :
    :
    :
    :

CP-51-CR-0000624-2012
CP-51-CR-0004336-2013

1425 EDA 2015

### PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Hugh Burns, Esq.
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

Michael Coard, Esq.
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, PA 19103

DATED 11/23/15

Michelle Yee, Esq.
Law Clerk to the Honorable Timika R. Lane