J-A15029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.S.F. | |
| Appellant | No. 3211 EDA 2013 |

Appeal from the Order Entered October 28, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003335-2010

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED SEPTEMBER 12, 2014**

K.S.F. appeals from the order entered in the Court of Common Pleas of Montgomery County reinstating his sentence following this Court's remand for an *in camera* hearing to determine admissibility of a Facebook post by the complainant, K.S.F.'s minor stepdaughter ("Stepdaughter").  After careful review, we reverse and remand for a new trial.

In August 2011, a jury convicted K.S.F. of the following sexual crimes against Stepdaughter:  four counts of involuntary deviate sexual intercourse with a child;[1] three counts of involuntary deviate sexual intercourse - complainant less than 16 years of age;[2] four counts of statutory sexual

_____

[1] 18 Pa.C.S. § 3123 (b).

[2] 18 Pa.C.S. § 3123 (a)(7).

assault;[3] five counts of indecent assault - complainant less than 13 years of age;[4] three counts of indecent assault - complainant less than 16 years of age;[5] and one count of corruption of a minor.[6] Prior to trial, K.S.F. filed a motion to access Stepdaughter's two profiles on the social networking website Facebook. K.S.F. alleged one of Stepdaughter's profiles contained impeachable material, in which Stepdaughter described herself as a "virgin." At that time, K.S.F. could not access Stepdaughter's postings due to privacy settings. The trial court ruled the evidence inadmissible, stating:

> [E]vidence that Stepdaughter posted she was a "virgin," fell within the ambit of the Rape Shield Law and that a teenage girl posting that she was a "virgin," despite being sexually abused by her Stepfather[,] was a self-characterization that did not have significant enough probative value as to the credibility of her claimed abuse by [K.S.F.] to overcome the Rape Shield Law barrier.

Trial Court Opinion on Remand, 10/28/13, at 5. **See also** Trial Court Opinion, 7/13/12, at 8-13; 18 Pa.C.S. § 3104.

Following his conviction, the court determined K.S.F. to be a sexually violent predator, and sentenced him to an aggregate term of 12 to 24 years' incarceration. On direct appeal, this Court vacated and remanded,

_____

[3] 18 Pa.C.S. § 3122.1.

[4] 18 Pa.C.S. § 3126(a)(7).

[5] 18 Pa.C.S. § 3126(a)(8).

[6] 18 Pa.C.S. § 6301(a)(1).

instructing the trial court to hold an *in camera* hearing and apply the three-prong balancing test outlined in ***Commonwealth v. Black***, 487 A.2d 396, 401 (Pa. Super. 1985), after which the trial court could grant a new trial or reinstate the judgment of sentence. ***See Commonwealth v. K.S.F.***, 2497 EDA 2011, slip op. at 20-26 (Pa. Super., filed April 12, 2013).

The trial court held an *in camera* ***Black*** hearing on June 26, 2013. Stepdaughter testified that when she wrote on Facebook that she had never had sex before, she meant she had never had consensual sex. The trial court subsequently reinstated the judgment of sentence, and K.S.F. filed this appeal.

K.S.F. raises four issues for our review:

1. Whether the statement made by Stepdaughter that she "had never had sex in her life" posted on Facebook prior to trial but subsequent to allegedly being forced to have sex with K.S.F. should have been admissible for impeachment purposes?

2. Whether the trial court erred in determining that Stepdaughter's privacy rights outweighed K.S.F.'s Sixth Amendment right to present a defense, especially in light of the fact that Stepdaughter posted a statement on Facebook for a large number of people to see?

3. Whether the trial court invaded the province of the jury by determining the meaning of the Facebook post, failed to consider the entire context of the statement, and erred in ruling that the statement was unfairly prejudicial?

4. Whether the Commonwealth violated **Brady v. Maryland**, 373 U.S. 479 (1984),[7] by not disclosing the Facebook note to K.S.F. prior to trial?

The first three claims all speak to the issue of whether the trial court abused its discretion in determining the admissibility of the Facebook posting at the **Black** hearing. We will therefore proceed with a discussion of the trial court's application of the three-factor **Black** test. As our disposition of this case has the same effect as a successful **Brady** challenge, we need not address K.S.F.'s claim under **Brady**.

Our standard of review for admission of evidence of a victim's prior sexual conduct is as follows:

> A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

_____

[7] In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. A **Brady** violation occurs when: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant. **See Commonwealth v. Paddy**, 800 A.2d 294, 305 (Pa. 2002); **see also** Pa.R.Crim.P. 573.

*Commonwealth v. Holder*, 815 A.2d 1115, 1118 (Pa. Super. 2003) (citing

*Commonwealth v. Allburn*, 721 A.2d 363, 366 (Pa. Super. 1998))

(citations and quotations omitted).

The Rape Shield Law provides as follows:

§ 3104. Evidence of victim's sexual conduct

(a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a). Although the literal language of the Rape Shield Law

would appear to bar a wide range of evidence, courts have interpreted the

statute to yield to certain constitutional considerations implicating the rights

of the accused. *See*, *e.g.*, *Commonwealth v. Riley*, 643 A.2d 1090, 1093

(Pa. Super. 1994) (right to cross-examine witnesses).

Evidence that tends to impeach a witness' credibility is not necessarily

inadmissible because of the Rape Shield Law. *Black*, 487 A.2d at 401.

When determining the admissibility of evidence that the Rape Shield Law

may bar, trial courts hold an *in camera* hearing and conduct a balancing test

consisting of the following factors: "(1) whether the proposed evidence is

relevant to show bias or motive or to attack credibility; (2) whether the

probative value of the evidence outweighs its prejudicial effect; and (3)

whether there are alternative means of proving bias or motive or to challenge credibility." *Id.*

Here, it is not disputed that the relevancy prong from *Black* was satisfied. *See* Trial Court Opinion on Remand, 10/28/13, at 7-8. However, the trial court erred as a matter of law in weighing the probative value of the evidence against the prejudice of its admission.

In *Commonwealth v. Spiewak*, 617 A.2d 696 (Pa. 1992), our Supreme Court held "rules excluding evidence cannot be mechanistically applied to abridge a defendant's right of confrontation by denying admission of highly reliable and relevant evidence critical to his defense." *Id*. at 701. There, the defendant was accused of having sexual relations with his underage stepdaughter. Although defendant admitted to the relationship after the victim had turned sixteen, he denied that it existed before that date. The trial court would not permit the defendant to cross-examine the victim about a statement in which she earlier said she had had one sexual relationship during the relevant period with "an older man," whom she identified as a friend of her stepfather. The Supreme Court reversed, holding that the testimony was admissible for the purpose of impeachment. In so holding, the court took into account a defendant's Sixth Amendment right to confront his accusers as well as his right to a fair trial through cross-examination.

In *Commonwealth v. Johnson*, 566 A.2d 1197 (Pa. Super. 1989), this Court held "the Rape Shield Law is a bar to admission of testimony of

prior sexual conduct involving a victim, . . . unless it has probative value which is exculpatory to the defendant." *Id*. at 1202. Here, the trial court devotes substantial discussion to considering the meaning of the Facebook posting and the potential prejudice to Stepdaughter, but fails to grasp fully the probative value of the evidence sought to be admitted. The trial court only goes as far as to say that the statement "is probative to [Stepdaughter's] credibility." Trial Court Opinion on Remand, 10/28/13, at 11. The trial court fails to address the fact that were K.S.F. able to convince the jury of Stepdaughter's lack of credibility, the Commonwealth's case would be seriously undermined. Accordingly, the probative value of a prior inconsistent statement in which Stepdaughter purports to deny prior sexual conduct is critical.

Further, the trial court's finding that admission of Stepdaughter's Facebook posting would prejudice her is not consistent with the express purpose of the Rape Shield Law, nor with the *Black* test. 487 A.2d at 401. The purpose of the Rape Shield Law is to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim . . . [and] to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009); *see also Commonwealth v. Northrip*, 945 A.2d 198, 205 (Pa. Super. 2008) (finding no prejudice where evidence did not attack reputation for chastity in way section 3104 designed to protect). The *Black* Court's express motivation for the test is to exclude

relevant evidence that would "so inflame the minds of jurors that its probative value is outweighed by unfair prejudice." 487 A.2d at 401 (citing **Commonwealth v. Stewart**, 450 A.2d 732, 734 (Pa. Super. 1982)) (quotation marks omitted). A statement in which a victim claims to be a virgin cannot reasonably be understood to prejudice her by smearing her reputation for virtue and chastity, nor is it inflammatory.[8] On the other hand, the potential exculpatory value of the statement, as discussed above, is substantial.

In addition, the trial court erred in determining that the Facebook posting meant that Stepdaughter had not had consensual sex only. "The purpose of [an *in camera*] hearing required by the Rape Shield Law is to enable a trial court to determine whether tendered defense evidence of the victim's prior sexual activity is relevant and admissible." **Commonwealth v. Baronner**, 471 A.2d 104, 106 (Pa. Super. 1984). The trial court is not to use the hearing to assess the credibility of the evidence sought to be admitted. **Id.** Credibility determinations are to be made by the jury. **Id.**

_____

[8] K.S.F. devotes significant space in his brief on the issue of whether Stepdaughter would be prejudiced by an invasion of her privacy rights were the Facebook posting admitted. We fail to see the relevance of her general right to privacy in this context. The Rape Shield Law was passed to prevent a specific class of attacks against the character of victims in rape prosecutions. It is not a bar against the admission of relevant evidence, the disclosure of which invades a victim's privacy, provided it does not involve "past sexual conduct."

Stepdaughter's statement that she was a virgin could be interpreted to mean that she had never had consensual sex. This is, in fact, the way Stepdaughter explained the Facebook posting at the ***Black*** hearing. N.T. Hearing, 6/26/13, at 12. However, the Facebook posting could also be interpreted to mean that she had never had *any* sex, including with K.S.F. Whether Stepdaughter's narrative was to be believed was a credibility determination that should properly have been put before a jury. ***See Baronner***, 471 A.2d at 106. For these reasons, the trial court abused its discretion in determining that the prejudice to Stepdaughter outweighed its probative value.

The third prong of the ***Black*** test requires a consideration of alternative means to impeach the victim's credibility. Our jurisprudence is scant on instances that have explored this factor in depth, however, several cases are instructive. In ***Commonwealth v. Weber***, 675 A.2d 295, 302 (Pa. Super. 1996), ***rev'd on other grounds*** 701 A.2d 531 (Pa. 1997), this Court found that the third prong was not satisfied where the evidence sought to be admitted only added to a short list of evidence that tended to attack the victim's credibility. The ***Weber*** Court admitted the evidence, however, because it also tended to show the victim's motive. ***Id.*** In ***Commonwealth v. Killen***, 680 A.2d 851, 854 (Pa. 1996), our Supreme Court held that suggestive statements made by the victim shortly after the alleged sexual assault, in which she appeared jovial, were admissible, not to show her promiscuous demeanor, but to undermine the credibility of her

claims that she had been sexually assaulted. The court noted that this evidence did not speak to past behavior, but directly to the crime charged, and therefore was not barred by the Rape Shield Law. ***Id.***

Here, the trial court determined that K.S.F. had adequate opportunity to impeach Stepdaughter's credibility without the Facebook posting. There were other pieces of evidence available to impeach Stepdaughter's credibility. Trial Court Opinion on Remand, 10/18/13, at 12; ***see also Weber***, 675 A.2d at 302. However, nothing was quite as poignant as Stepdaughter's explicit statement that the very acts that were at the heart of the prosecution in fact may never have occurred. ***See Killen***, 680 A.2d at 854 (sexual statements relating directly to the alleged assault admissible). This calls into question whether the trial court fully considered the value of this specific piece of evidence in the context of the final prong.

The ***Black*** test is a balancing test. It is undisputed that the first prong has been satisfied, and we find that the trial court has abused its discretion in determining the second and third prongs. The balance undeniably weighs in favor of admission of the Facebook posting.

Having concluded the trial court abused its discretion in its application of the test, we reverse the judgment of sentence and remand for a new trial.

Reversed and remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/2014