J-S35010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL ERIC DRAKE | |
| Appellant | No. 753 EDA 2014 |

Appeal from the Judgment of Sentence February 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012343-2011

BEFORE: MUNDY, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JUNE 18, 2015**

Appellant, Michael Eric Drake, appeals from the February 7, 2014
aggregate judgment of sentence of 20 to 40 years' imprisonment, imposed
after a jury found him guilty of one count each of aggravated assault, rape
by forcible compulsion, sexual assault, and indecent assault by forcible
compulsion.[1]  After careful review, we affirm.

The trial court set forth the facts of this case as follows.

> Late in the evening of November 27, 2010,
> [Victim] went to a bar located at 52nd and Girard
> Avenue with some friends.  Before entering the bar,
> [Victim] observed [Appellant] who was standing

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 3121(a)(1), 3124.1, and 3126(a)(2),
respectively.

outside of the bar. He started a conversation with her and asked her if she wanted to get a drink. They then went into the bar to have a drink together. After drinking one or two beers, [Victim] told [Appellant] that she was leaving the bar to meet a friend. [Appellant], who lived about a block away from [Victim's] friend, asked to walk with her. As they were walking, [Victim] called her friend and learned that he would not be home for another 10 minutes. While she waited for the friend to arrive, [Victim] asked if she could use the bathroom at [Appellant]'s house.

After [Victim] used the bathroom on the second floor, she walked downstairs toward the front door. [Appellant] asked her where she was going. [Victim] replied that she was leaving to meet her friend. [Appellant] then grabbed [Victim] from behind by her hair. He told her that she was not going anywhere and punched her several times on the left side of her face with a closed fist, which caused her face to swell and her mouth to bleed. He then dragged her to the dining room and laid down a blanket. [Appellant], who had already taken off his clothes, started to rip off [Victim's] clothes. He pushed [Victim] to her knees and forced his penis into her mouth. [Appellant] also forced her to have vaginal sex. After he ejaculated, [Victim] asked if she could use the bathroom to look at her face and put her clothes back on.

After looking at her face in the bathroom, [Victim] left the bathroom and walked back downstairs. [Appellant] asked her, "What was I doing?" [Victim] replied, "I have family. I have kids. I have to go home. I have people waiting for me." In response, [Appellant] hit her again and threw her to the floor. He said, "Shut up, B. Be quiet. I didn't ask you to talk. You're not going anywhere. I'm not finished with you yet. I'm having anal sex with you. It's not over yet. I'm not finished with you."

At this point, [Victim] feared for her life. She stood up and looked for anything that she could use as a weapon to ward off another assault by [Appellant]. With nothing in sight, [Victim] decided to punch the glass window of a china cabinet to obtain a piece of broken glass as a weapon to cut [Appellant]. When she punched the glass, [Victim] suffered severe cuts to her right arm and was bleeding heavily. As [Victim] went to lash at [Appellant] with the broken shard of glass, he fled the house wearing only his jeans. [Appellant] left his wallet, jacket, identification, and money in the dining room where he had assaulted [Victim]. In an effort to alert someone, [Victim] broke the front windows of the house. She ultimately went to the house next door and told the boy who answered the door that she needed help because she had just been raped.

[Victim] was transported to Jefferson Hospital where she received stitches to her arm and hand. Hospital staff documented injuries to her lip, swelling to her face, and cuts on the inside of her mouth. A rape kit was performed on [Victim]. Prior to the rape kit being performed, however, doctors had to remove a tampon, which was pushed very far inside of [Victim's] vagina. [Victim] had used a tampon because she was in her menstrual period.

Detective Lara Hammond of the [s]pecial [v]ictims [u]nit met with [Victim] at her home on November 29, 2010. [Victim] provided a signed statement to Detective Hammond regarding the assault. [Victim] also positively identified [Appellant] from a photo array. Detective Hammond issued a warrant for [Appellant]'s arrest. Detective Hammond also collected evidence from and took photographs of [Appellant]'s home.

At trial, [Victim] testified that she never consented to sexual intercourse with [Appellant], and that she never made any deal with him to trade sex for drugs. She admitted that, prior to going to the bar, she smoked two marijuana cigarettes laced with crack and took her prescribed medications of

- 3 -

Flurazine and Remeron. During the trial, [Victim] was in custody for violating her probation. She testified that the prosecutor made no promises to her regarding her violation of probation for her testifying at trial. On cross-examination, [Victim] conceded that her statement to Detective Hammond contained inconsistencies, but stated that they were the result of her being hysterical at the time and "coming down off medicine from the hospital."

[Philadelphia police officer Mark McDermott testified that] [o]n November 28, 2010, at 5:38am, [he] was on routine patrol in a marked police vehicle in the area of 58th and Master Streets when he observed [Victim] "waving her arms, flailing as she was in a panic mode. As we got closer, we could see that she was covered in blood, and she looked to be in extreme need of emergency assistance." Officer McDermott asked [Victim] what happened. [Victim] replied that she had just been raped at 5802 Master Street. Officer McDermott went to the house and observed blood all over the porch, a broken front window, large amounts of blood in the living room, a china cabinet that had a broken pane of glass, and blankets and pillows next to the china cabinet.

[Philadelphia police officer Jeffrey McMahon testified that] [o]n July 19, 2011, [he] was on routine patrol in a marked police vehicle. Officer McMahon conducted a traffic stop of a gold Nissan Altima driven by [Appellant] to investigate the vehicle's brake light that was not operating. When Officer McMahon asked [Appellant] for his driver's license, [Appellant] provided the officer with a false name. After being unable to confirm his identity based upon the false name, Officer McMahon removed [Appellant] from his vehicle. [Appellant] then provided his real name and was arrested pursuant to the warrant by Detective Hammond.

Gamal Emira testified as an expert in forensic science. Based upon his review of certain samples from the rape kit performed on [Victim], he testified,

- 4 -

*inter alia*, that the vaginal and vulva swabs were positive for sperm.

David Hawkins testified as an expert in forensic DNA analysis. Based upon his review of certain samples from the rape kit performed on [Victim] and from a swab from [Appellant], he testified, *inter alia*, that [Appellant] was a male source of the DNA mixture contained in the vaginal swab sperm cell infraction and the rectal swab E cell fraction.[2]

---

[2] Hawkins also testified at trial regarding the first and fourth opinion in his report, *i.e.*, that: (1) Defendant was *excluded* as a male source of the DNA mixture contained in the vaginal swab E cell fraction and the rectal swab sperm fraction, and (2) another male was a source of the DNA mixture. … [T]he trial court specifically instructed the jury that the trial court admitted that testimony in error, that those two opinions were stricken from the record, and that the jury could not consider those stricken opinions in reaching a verdict.

Trial Court Opinion, 10/8/14, at 1-5 (italics in original; headings and citations omitted).

On November 2, 2011, the Commonwealth filed an information, charging Appellant with the aforementioned offenses, as well as one count each of involuntary deviate sexual intercourse by forcible compulsion, indecent exposure, simple assault, recklessly endangering another person, and false imprisonment.[2] On August 5, 2013, Appellant proceeded to a four-day jury trial *in absentia*. On August 8, 2013, the jury found Appellant guilty

---

[2] 18 Pa.C.S.A. §§ 3123(a)(1), 3127(a), 2701(a)(1), 2705, and 2903, respectively.

of one count each of aggravated assault, rape by forcible compulsion, sexual assault, and indecent assault by forcible compulsion. The jury found Appellant not guilty of involuntary deviate sexual intercourse by forcible compulsion, and the remaining charges were withdrawn. On February 7, 2014, the trial court imposed an aggregate sentence of 20 to 40 years' imprisonment.[3] Appellant did not file post-sentence motions. On March 10, 2014, Appellant filed a timely notice of appeal.[4]

_____

[3] Specifically, the trial court sentenced Appellant to 10 to 20 years' imprisonment on the conviction for rape. On the aggravated assault conviction, the trial court imposed a sentence of 10 to 20 years' imprisonment, to run consecutively to the sentence for rape. On the conviction for sexual assault, the trial court imposed a concurrent sentence of five to ten years' imprisonment. On the conviction for indecent assault, the trial court imposed a concurrent sentence of one and one-half to five years' imprisonment. Accordingly, Appellant's aggregate sentence was 20 to 40 years' imprisonment.

[4] We observe that the 30th day fell on Sunday, March 9, 2014. When computing the 30-day filing period "[if] the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation." 1 Pa.C.S.A. § 1908. Therefore, the 30th day for Appellant to file a timely notice of appeal was on Monday, March 10, 2014. As a result, his appeal was timely filed.

The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) on March 21, 2014. The statement was due 21 days from the date of this filing, on April 11, 2014. Appellant's Rule 1925(b) statement was not filed until August 8, 2014. Our Supreme Court has recently held that "Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered[.]" **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011).

*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue for our review.

> Whether denying Appellant the ability to cross[-]examine the Commonwealth's expert, on the first and fourth opinions he testified to [on] direct [examination], violated Appellant's Sixth Amendment right to confrontation[?]

Appellant's Brief at 3. Specifically, Appellant argues that he should have been allowed to cross-examine Hawkins, the Commonwealth's DNA expert, on his conclusions that Appellant's DNA was not the only male DNA found during the review of the rape kit performed on Victim.

We begin by noting our standard for deciding issues of the admissibility of evidence of a sexual abuse victim's prior sexual conduct.

> A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a

_(Footnote Continued)_ ─────────────────

However, this Court has held that the failure to timely file a Rule 1925(b) statement is the equivalent of a failure to file said statement. **_Commonwealth v. Thompson_**, 39 A.3d 335, 340 (Pa. Super. 2012), _citing_ **_Commonwealth v. Burton_**, 973 A.2d 428, 433 (Pa. Super. 2009) (_en banc_). Both failures constitute _per se_ ineffective assistance of counsel, which in criminal cases ordinarily requires a remand for the filing of a Rule 1925(b) statement pursuant to Pa.R.A.P. 1925(c)(3). **_Id._** However, this Court has held "[w]hen counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues we need not remand and may address the merits of the issues presented." **_Id._** (citation omitted). On October 8, 2014, the trial court issued its Rule 1925(a) opinion, accepting Appellant's untimely Rule 1925(b) statement, and addressing the issue Appellant now raises before this Court. Therefore, pursuant to this Court's holding in **_Thompson_**, we may address the merits of Appellant's claim.

conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa. Super. 2014) (citation omitted).

The Rape Shield Law provides as follows.

**§ 3104. Evidence of victim's sexual conduct**

**(a) General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct **with the defendant where consent of the alleged victim is at issue** and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a) (emphasis added). The purpose of the Rape Shield Law is to preclude a defendant from shifting the focus of the trial from the defendant's culpability to the victim's virtue and chastity. *K.S.F.*, *supra* at 484 (citations omitted). To accomplish this, the Rape Shield Law excludes "irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009) (*en banc*) (citation omitted), *appeal denied*, 8 A.3d 341 (Pa. 2010).

Despite the broad scope of the Rape Shield Law, Pennsylvania courts have recognized an exception to protect an accused's right to confrontation

pursuant to the Sixth Amendment of the United States Constitution. ***K.S.F.***, ***supra*** at 483, *citing* ***Commonwealth v. Riley***, 643 A.2d 1090, 1093 (Pa. Super. 1994); ***see also Burns***, ***supra*** at 690 (noting exceptions to the Rape Shield Law). Specifically, "evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial." ***Commonwealth v. Fensler***, 715 A.2d 435, 439 (Pa. Super. 1998) (citation and internal quotation marks omitted).

In his sole issue on appeal, Appellant maintains "[he] should have been allowed to cross-examine [Hawkins regarding the presence of other male DNA in Victim's rape kit] and mention it in closing. [] Appellant was prevented from doing so, in violation of his Sixth Amendment right to [c]onfrontation." Appellant's Brief at 7. Specifically, Appellant argues that the Commonwealth "opened the door" to such cross-examination by eliciting testimony during direct examination from Hawkins on his first and fourth opinions regarding the presence of other male DNA. Appellant's Brief at 11. We conclude Appellant's issue is moot.

Before the jury trial began, the trial court denied the Commonwealth's motion *in limine* that sought to exclude Hawkins' first and fourth opinions regarding the presence of other male DNA. Thus, on direct examination, Hawkins testified to said opinions in accordance with the trial court's ruling. However, the Commonwealth objected to Appellant's counsel cross-

examining Hawkins on those opinions, and the trial court held an off-the-record sidebar conference. N.T., 8/6/13, at 168. Following this sidebar, there was no further cross-examination of Hawkins. *Id.* at 168. Further, at the end of the first day of testimony, Appellant's counsel acknowledged that he made a "strategic decision on behalf of [Appellant] to not conduct a thorough cross-examination of … Mr. Hawkins." *Id.* at 192. During the next day of trial, the trial judge informed the attorneys that he had reconsidered his ruling on the motion *in limine*, and had found Hawkins' opinions pertaining to the presence of other male DNA were inadmissible under the Rape Shield Law. N.T., 8/7/13, 44-45. Accordingly, the trial court instructed the jury that it was removing from the jury's consideration the expert's testimony regarding these opinions as follows.

> Yesterday I allowed the criminalistics expert to testify regarding [] the rectal swab and the DNA expert to testify regarding four opinions that he reached. Upon further consideration, I admitted the rectal swab and the first and four[th] opinions in error. I'm instructing you that I'm hereby striking the testimony and any other evidence of the rectal swab and of the first and [fourth] opinions from the record, and you cannot consider either the rectal swab or the first and fourth opinion in reaching your verdict. That is a special instruction given to you now.

*Id*. at 64-65; *accord id.* at 49; Trial Court Opinion, 10/8/14, at 6-8.

Based on the trial court's ruling striking all of the evidence regarding the presence of other male DNA in Hawkins' first and fourth opinions, Appellant's contention that he should have been permitted to cross-examine

- 10 -

Hawkins on those opinions and use that evidence in his closing argument is moot. Significantly, Appellant concedes that the trial court properly excluded Hawkins' first and fourth opinions because they were inadmissible under the Rape Shield Law. Appellant's Brief at 7 (admitting "this evidence would normally be covered under the Rape Shield Law[…]"). Nevertheless, Appellant argues, "[s]ince this testimony was on direct, it opens the door for defense to comment and expand on that evidence." *Id.* at 11. This question, however, was rendered moot by the trial court's decision that the testimony was inadmissible due to the Rape Shield Law, which Appellant does not contest. Because the testimony was not submitted for the jury's consideration, Appellant was not denied his right to confront Hawkins on stricken testimony nor was he entitled to mention that evidence in his closing argument.

Based on the foregoing, we conclude Appellant's issue is moot. Accordingly, the trial court's February 7, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judge Olson concurs in the result.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2015