J-A32016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 466 MDA 2017 |
| DAYAR D. BROWN | | |

Appeal from the Order Entered March 15, 2017
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000400-2016

BEFORE: OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 06, 2018**

Appellant, Commonwealth of Pennsylvania ("Commonwealth"), appeals from the March 15, 2017 Order entered in the Centre County Court of Common Pleas, which, *inter alia*, denied the Commonwealth's Motion to Preserve the Rape Shield Law and granted Appellee's Motion *in Limine* to present evidence of Complainant's prior sexual conduct. Upon careful review, we reverse.

**FACTUAL AND PROCEDURAL HISTORY**

The factual and procedural history, as gleaned from the trial court's Opinion, are as follows. On October 28, 2015, 16-year-old G.L. ("Complainant") visited her co-worker, 22-year-old Appellee, at his apartment. Complainant alleges that she entered Appellee's bedroom where he proceeded to rape her. Appellee concedes that he had sexual intercourse with Complainant, but maintains that the sexual intercourse was consensual.

---

* Retired Senior Judge assigned to the Superior Court.

On November 6, 2015, Complainant sought medical treatment at Planned Parenthood and disclosed that Appellee raped her. Planned Parenthood contacted the Pennsylvania State Police ("PSP").

On November 7, 2015, Complainant met with the PSP. Complainant told the PSP that Appellee did not wear a condom during the alleged rape and seminal fluid was present on her lower body afterwards. Complainant informed the PSP that she had not washed the clothing that she wore on the evening of the alleged rape.

Complainant provided the clothing that she wore that night to the PSP, who sent it to the PSP Crime Lab for testing. The PSP Crime Lab found spermatozoa, or semen, on Complainant's underwear and proceeded to conduct a DNA test. The DNA test results excluded Appellee as the source of the semen and identified another male ("Mr. D") to be the source of the semen.[1]

On March 30, 2016, the District Attorney charged Appellee with Rape by Forcible Compulsion, Sexual Assault, and Corruption of Minors.[2] On February 27, 2017, the Commonwealth filed Motions *in Limine*, including, *inter alia*, a Motion to Preserve the Rape Shield Law, which requested that the trial court preclude Appellee from introducing evidence at trial concerning Complainant's

---

[1] Court documents only identify this minor male by his last name, and, thus, we will refer to him as "Mr. D."

[2] 18 Pa.C.S. § 3121(a)(1); 18 Pa.C.S. § 3124.1; and 18 Pa.C.S. § 6301(a), respectively.

sexual conduct and/or reputation. On the same day, Appellee filed a Motion *in Limine* seeking, *inter alia*, permission to introduce evidence of Complainant's sexual conduct.

Appellee sought to use the evidence of Mr. D's semen on Complainant's underwear to demonstrate that Complainant had a sexual relationship with Mr. D at the time of the alleged rape and thus, had a motive to testify falsely that she did not consent to the sexual intercourse with Appellee in order to preserve that relationship.[3]

The Commonwealth, in contrast, argued that at the time of the alleged rape, Complainant had already terminated her relationship with Mr. D and thus, she had no motive to testify falsely that she did not consent because she had no relationship to maintain.

On March 13, 2017, the trial court held an *in camera* hearing on the Motions *in Limine.* The Commonwealth called an expert witness, Jennifer Marchland, a forensic scientist employed by the PSP Crime Lab who is an

---

[3] Appellee also proffered that the evidence was relevant to: (1) challenge Complainant's credibility by showing a prior inconsistent statement as to when she last had sexual intercourse with Mr. D; and (2) show that Complainant had a motive to fabricate the rape allegation so she could seek pregnancy and STD testing at Planned Parenthood. The trial court rejected the introduction of the proffered evidence for these purposes, concluding that it would be more prejudicial than probative. **See** Findings of Fact, Conclusions of Law, and Order, dated 3/15/17, at 5.

expert in serology.[4] Ms. Marchland testified that she tested Complainant's clothing and found spermatozoa, or semen, on the crotch area of Complainant's underwear. N.T., Motion, 3/13/17, at 69. She, however, testified that it cannot be determined when or how the semen was deposited onto Complainant's underwear. *Id.* at 73. Ms. Marchland further testified that no scientific test exists to determine how long ago semen was deposited onto clothing. *Id.* at 70. She explained that detectable semen can last on clothing for several years, survive under most conditions, survive multiple launderings, and transfer from one article of clothing to another in a shared washing machine. *Id.* at 70, 72-73.

Appellee presented no evidence refuting Ms. Marchland's testimony that it cannot be determined when Mr. D's semen was deposited on Complainant's underwear.

On March 15, 2017, the trial court granted Appellee's Motion *in Limine* to permit introduction of Complainant's sexual conduct with Mr. D, specifically the introduction of DNA evidence showing the presence of Mr. D's semen on Complainant's underwear. The trial court concluded that the evidence of Mr. D's semen on Complainant's underwear was relevant to the issue of whether Complainant was in an ongoing relationship with Mr. D. If Complainant were

_____

[4] Ms. Marchland testified that serology is the study of blood. Ms. Marchland explained, "[i]n forensic serology I examine and identify blood in addition to other body fluids such as semen and saliva and urine. I also conduct hair examinations and I conduct blood stain pattern analysis." N.T. Motion, 3/13/17, at 65.

involved in a relationship, the court opined, Complainant would have a motive to testify falsely that she did not consent to alleged rape. *See* Findings of Fact, Conclusions of Law, and Order, dated 3/15/17, at 4. The trial court then concluded that the proffered evidence was more probative than prejudicial and non-cumulative. *Id.*

On the same day, the trial court denied the Commonwealth's Motion to Preserve the Rape Shield.

The Commonwealth filed a timely Notice of Appeal.[5] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

## ISSUE ON APPEAL

The Commonwealth raises one issue for our review:

> Did the [trial court] err in granting [Appellee]'s motion to pierce Rape Shield protections in order to both cross examine a minor rape victim and introduce extrinsic DNA evidence of her prior, consensual, sexual relationship with an individual other than [Appellee] and commit an abuse of discretion by denying the Commonwealth's Motion *in [L]imine* to exclude such irrelevant, statutorily protected evidence?

Commonwealth's Brief at 4.

---

[5] The trial court's March 15, 2017 Order is an appealable collateral order pursuant to Pa.R.A.P. 311(a). *See Commonwealth v. Minich*, 4 A.3d 1063, 1067-68 (Pa. Super. 2010) (holding that trial court's order denying Commonwealth's *in limine* motion to exclude evidence of child rape victim's alleged dishonest conduct, in that he had been caught lying in school, was an appealable collateral order; resolution of issue did not require consideration of defendant's guilt or innocence, child's privacy interests were matters of paramount concern which were too important to be denied review until final judgment, and in event of an acquittal, Commonwealth's ability to appeal the evidentiary issue would be irreparably lost if review were postponed until after final judgment, due to constitutional prohibition against double jeopardy).

**STANDARD OF REVIEW**

This Court has established that a trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. ***Commonwealth v. K.S.F.***, 102 A.3d 480, 483 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." ***Id.*** (citation and quotation omitted).

**THE RAPE SHIELD LAW**

The Rape Shield Law restricts the introduction of evidence of a victim's past sexual conduct and provides, in pertinent part, as follows:

> Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a). The purpose of the Rape Shield Law is "to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." ***Commonwealth v. Burns***, 988 A.2d 684, 689 (Pa. Super. 2009) (citation omitted). Moreover, "[t]he Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." ***Id.***

- 6 -

The Rape Shield Law includes one statutory exception to the general prohibition against evidence of victim's past sexual conduct, namely the admission of evidence of past sexual conduct with the defendant where consent is at issue. *See* 18 Pa.C.S. § 3104(a). In addition, this Court has recognized several other exceptions in an effort "to reconcile the effect of the statute in excluding evidence with the accused's sixth amendment right to confrontation and cross-examination." *Commonwealth v. Guy*, 686 A.2d 397, 400 (Pa. Super. 1996). Established exceptions include evidence that directly negates the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility. *Commonwealth v. Allburn*, 721 A.2d 363, 367 (Pa. Super. 1998). Notably, "evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial." *Guy*, *supra* at 400. In other words, the evidence must be "relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature." *Id.* at 401.

**Piercing the Rape Shield Law**

Instantly, the Commonwealth avers that the trial court abused its discretion when it allowed Appellee to pierce the Rape Shield Law. Commonwealth's Brief at 10. The Commonwealth argues, as an initial matter, that the evidence of Mr. D's semen on Complainant's underwear is not relevant to establish whether, at the time of the alleged rape, Mr. D and Complainant were involved in a relationship because Ms. Marchland testified that it cannot

be determined when or how the semen was deposited on the underwear. ***Id.*** at 20. We agree.

The trial court erred by ignoring the undisputed expert testimony that it could not be determined from the semen sample when Complainant and Mr. D had sex. The trial court instead erroneously concluded that the existence of the semen itself is relevant because it can permit the fact-finder to determine whether there was an ongoing relationship between Complainant and Mr. D at the time of the alleged rape. However, the expert could not conclude when Mr. D deposited semen on Complainant's underwear. Thus, the presence of Mr. D's semen on Complainant's underwear does not make it any more or less likely that, on the night of the alleged rape, Complainant was in an ongoing relationship with Mr. D and would thereby have a motive to testify falsely that she did not consent to the rape.

In light of the fact that the evidence is irrelevant to the issue of whether Complainant had a motive to fabricate, questioning Complainant about the sexual nature of her relationship with Mr. D serves no purpose other than to shift focus "from the culpability of the accused toward the virtue and chastity of the victim[,]" which is exactly what the Rape Shield Law was intended to prevent. ***Burns***, ***supra*** at 689.

This holding, however, does not preclude Appellee's counsel from cross-examining Complainant about her alleged ongoing romantic relationship with Mr. D in order to attempt to establish that Complainant had a relationship with Mr. D at the time of the alleged rape and, thus, Complainant had a motive to

lie about the lack of consent. Appellee's counsel, however, cannot ask about the sexual nature of that relationship because the evidence of the sexual nature of the relationship is not relevant and is highly prejudicial. ***See Commonwealth v. Poindexter***, 539 A.2d 1341, 1344 (Pa. Super. 1988) (concluding that defendant could attempt to show the victim's motive to fabricate rape allegations by presenting evidence of her romantic relationship with her boyfriend, but evidence that the relationship was sexual in nature was non-probative and highly prejudicial).

In sum, we find that the trial court erred in denying the Commonwealth's Motion *in Limine* to Preserve the Rape Shield Law and granting Appellee's Motion *in Limine* to present evidence of Complainant's prior sexual conduct. Upon remand, the trial court shall preclude Appellee from questioning Complainant about the sexual nature of her relationship with Mr. D and from introducing into evidence Complainant's underwear that contained Mr. D's semen.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/06/2018