J-S15013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DALONZO MONTEZ ZEPPRINANS | |
| Appellant | No. 406 EDA 2017 |

Appeal from the Judgment of Sentence imposed November 22, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0015788-2008

BEFORE:  STABILE, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED JULY 24, 2018**

Appellant, Dalonzo Montez Zepprinans, appeals from his judgment of sentence for endangering the welfare of a child ("EWOC"), indecent assault, corruption of minors, unlawful contact with a minor and terroristic threats.[1] We affirm.

The trial court summarized the evidence adduced during trial as follows:

> The evidence at trial established that Appellant sexually molested his step-daughter, T.M., from approximately the age of eight (8) until she was sixteen (16).  The time frame was set as between 1999 and 2008.  The Appellant, who[m] the complainant referred to as her step-dad, was married to her mother and lived with them.  The abuse, which occurred in different locations because the family changed residences over the years, occurred in the complainant's bedroom and usually after she had gone to sleep. The complainant testified that the abuse when it first began was every night and then it slowed down to every other night.  The Appellant would enter her bedroom and begin to kiss her breasts,

---

[1] 18 Pa.C.S.A. §§ 4304, 3126(a)(7), 6301, 3127, and 2706, respectively.

stomach, legs, vaginal area and vagina. The complainant would pretend to be asleep while this was occurring. The Appellant rubbed the complainant's vaginal area with his fingers and then kissed her vagina. Appellant would also lick her vagina. Each time the complainant woke up after these assaults she would notice white stains on her legs which she described as "cum" stains.

When asked by the complainant why he was abusing her, the Appellant told her "because he could," and "if she told her mom, she wouldn't see tomorrow". The complainant testified she was afraid to complain or resist the molestation because she had witnessed the physical abuse Appellant had inflicted upon her mother over the years.

On another occasion, the complainant was experiencing cramps and asked the Appellant for Tylenol. The Appellant brought her a blue pill which he said was her mom's "special Tylenol." The complainant became dizzy after taking the pill and fell asleep on her bed. When she woke up she noticed her bra and underwear had been removed and that there were "ejaculation stains" on her legs.

The complainant began recording the incidents in a diary and decided to leave the diary out one day in hopes that her mother would read about the abuse. Her mother did discover the diary, which the complainant had left open to a page describing the abuse. Her mother met her at school and as they drove home, she told her mother about the incidents. They then went to the Special Victims Unit, where the complainant was interviewed by detectives. The complainant also told her friend, L.R., about the Appellant's molestation.

The Appellant presented three (3) witnesses who testified to the living conditions at the various addresses where the complainant testified she was molested. These witnesses testified that they lived with the Appellant during the time the complainant was living with him and didn't notice anything unusual occurring between the complainant and Appellant. Their description of the living arrangements at the various residences was in conflict with the complainant's testimony.

Trial Court Opinion, 5/17/17, at 2-3.

Appellant waived his right to a jury trial, so several judges other than the trial judge ruled on various motions *in limine*. One motions judge denied Appellant's motion to exclude sixteen prior convictions for burglary and theft-related offenses and his motion to introduce evidence of complainant's prior sexual activity. A second motions judge granted the Commonwealth's motion to exclude evidence of the complainant's prior bad act of stealing her mother's engagement ring. A third motions judge denied Appellant's motion to strike L. R.'s testimony concerning the complainant's report of Appellant's crimes.

On July 23, 2012, following a bench trial in which Appellant did not testify, the trial court found him guilty of the aforementioned offenses. The trial court acquitted Appellant of multiple other charges, including rape, involuntary deviate sexual intercourse, statutory sexual assault, simple assault and reckless endangerment. On November 22, 2013, the trial court sentenced Appellant to 2-4 years' imprisonment for EWOC and a concurrent term of 2-4 years' imprisonment for indecent assault, followed by an aggregate of ten years' state reporting probation. Appellant did not appeal within the thirty-day appeal period, but on January 29, 2014, he filed a *pro se* PCRA petition alleging that his attorney was ineffective for failing to file a direct appeal. On May 19, 2015, Appellant filed an amended PCRA petition through counsel. The Commonwealth agreed to an evidentiary hearing, and on January 4, 2017, the court reinstated Appellant's direct appeal rights *nunc pro*

J-S15013-18

*tunc*. Appellant filed a timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises five issues in this appeal:

I. Whether the trial court erred in an adjudication of guilt because the verdict was contrary to law?

II. Whether the motions court abused its discretion by permitting the Commonwealth to admit evidence not provided to defense counsel?

III. Whether the motions court abused its discretion in denying the Appellant's Rape Shield Law motion?

IV. Whether the motions court abused its discretion in denying the Appellant's motion to bar the Commonwealth from impeaching him for crimen falsi convictions?

V. Whether the motions court abused its discretion in granting the Commonwealth's motion to preclude defense counsel's questioning of the complainant's bad acts mentioned in her diary?[2]

Appellant's Brief at 4.

In his first argument, Appellant challenges the sufficiency of the evidence underlying his convictions. When evaluating a sufficiency claim,

our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any

_____

[2] Appellant raised another issue in his statement of questions presented: "Whether the motions court abused its discretion in allowing the Commonwealth to introduce a protection from abuse order filed by the mother of the Complainant after the Appellant's arrest?" In the body of his brief, however, Appellant stated that he decided not to pursue this issue further.

- 4 -

doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010). Both direct and circumstantial evidence must be considered equally when assessing the sufficiency of the evidence. *Commonwealth v. Davalos*, 779 A.2d 1190, 1193 (Pa. Super. 2001).

We begin with Appellant's conviction for terroristic threats, which the Crimes Code defines as, *inter alia*, "communicat[ing], either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). The evidence was sufficient to support Appellant's conviction under this provision. When the complainant was fifteen, Appellant threatened that she would not see tomorrow if she reported his sexual abuse. The complainant took this threat seriously, since she had seen Appellant beat her mother repeatedly, once requiring a hospital visit. When the complainant asked why Appellant was abusing her, he answered: "Because I can." This evidence demonstrates that Appellant directly communicated a threat to murder the complainant with an intention to terrorize her.

Next, Appellant contends that the evidence was insufficient to prove EWOC, corruption of minors, and unlawful conduct with a minor because the complainant's testimony was so contradictory that it rendered his convictions pure conjecture. This merely raises a credibility challenge that the trial court

heard and rejected, not a proper sufficiency challenge. *Commonwealth v. Knox*, 165 A.3d 925, 927 (Pa. Super. 2017) (credibility challenges are not proper subject of sufficiency claims). Viewed in the light most favorable to the Commonwealth, the complainant's testimony supported these convictions by establishing that Appellant consistently molested her during night-time visits to her bedroom over an eight-year period.

The decisions cited by Appellant illustrate the exceedingly rare instances in which the complainant's testimony is so internally inconsistent that it reduces the Commonwealth's case to pure conjecture. *See Commonwealth v. Farquharson*, 354 A.2d 545, 551 (Pa. 1976) (complainant's testimony found incredible where she was accomplice who negotiated guilty plea, had history of mental and emotional disturbance, refused to implicate defendant for 1½ years following the crime, and defendant had rejected her romantic overtures); *Commonwealth v. Bennett*, 303 A.2d 220 (Pa. Super. 1973) (conviction for receiving stolen property (a car) reversed because it rested entirely on testimony of driver who pled guilty to stealing car and who gave several "wholly different, conflicting and inconsistent versions" on essential issues). Here, Appellant points out several inconsistencies between the complainant's preliminary hearing and trial testimony and other discrepancies in her trial testimony (for example, her claim at one point that she closed her eyes while Appellant assaulted her in bed versus her claim at another point that she took brief peeks). Appellant also objects to the trial court's assertion

that the complainant's diary contained accounts of repeated abuse, when in fact the diary only had two non-specific references that she was touched. We acknowledge that the complainant's testimony was not perfectly consistent, but it was not remotely as disjointed or contradictory as the testimony in *Farquharson* or *Bennett*. We also note that the trial court did not accept the Commonwealth's evidence uncritically but carefully weighed the evidence charge by charge, accepting some charges but rejecting the most serious charges for rape, involuntary deviate sexual intercourse and statutory sexual assault. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support the EWOC, corruption of minors and unlawful contact charges.

Finally, we find the evidence sufficient to support Appellant's conviction under subsection (a)(7) of the indecent assault statute, which provides in relevant part: "A person is guilty of indecent assault if the person has indecent contact with the complainant [or] causes the complainant to have indecent contact with the person and . . . the complainant is less than 13 years of age." 18 Pa.C.S.A. § 3126(a)(7). The Crimes Code defines "indecent contact" as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

The Commonwealth alleged that Appellant committed indecent assault on one occasion when the complainant was seven years old. As she emerged

from a shower naked except for a towel, Appellant picked her up by her bare legs, causing her towel to fall and leaving her nude. Appellant lifted her up and down as her legs were spread, telling her he was a weightlifter. When the front door to the house opened, Appellant dropped her and ran to his bedroom.

Viewed in the light most favorable to the Commonwealth, the evidence demonstrates that Appellant committed indecent assault when he "touch[ed] the sexual or other intimate parts" of the complainant for the purpose of sexual arousal or gratification. 18 Pa.C.S.A. § 3101. We previously have held that areas of the body other than the genitalia, buttocks, or breasts can be intimate parts of the body as contemplated by 18 Pa.C.S.A. § 3126(a)(7) when touched for sexual gratification. ***Commonwealth v. Fisher***, 47 A.3d 155, 158 (Pa. Super. 2013) (evidence sufficient to sustain indecent assault conviction where defendant licked backs of victim's legs from her ankles to just below her buttocks for the purpose of sexual gratification), citing ***Commonwealth v. Capo***, 727 A.2d 1126, 1127 (Pa.Super. 1999). Appellant's eight-year pattern of night-time molestation provides circumstantial evidence of Appellant's intent to derive sexual gratification from the incident underlying his conviction for indecent assault. ***See Davalos***, 779 A.2d at 1193 (circumstantial evidence is integral component in sufficiency of the evidence calculus); ***see also*** Pa.R.E. 404(b)(1-2) ("evidence of a **crime**, wrong, or other act . . . is admissible to prove **motive**, opportunity, **intent**,

- 8 -

preparation, plan, knowledge, identity, absence of mistake, or lack of accident") (emphasis added). Appellant's claim fails.

In his next argument, Appellant contends that the motions judge erred by refusing to exclude L.R.'s testimony due to the Commonwealth's failure, during pretrial discovery, to produce a written summary of L.R.'s conversation with the police concerning the complainant's report of abuse. We review the trial court's decision to admit evidence for abuse of discretion. ***Commonwealth v. Kennedy***, 959 A.2d 916, 923 (Pa. 2008).

During trial, the Commonwealth stated its intention to call L.R., the complainant's friend, as a witness. Appellant moved to exclude L.R.'s testimony because the written summary of L.R.'s conversation with the police was only a few lines long. The prosecutor explained that that was the only written summary the interviewing detective made. Since this was a bench trial, the parties litigated Appellant's motion *in limine* before a different judge. L.R. testified that she had spoken with the detective for 15-20 minutes and had told the detective that the complainant reported incidents in which Appellant had given the complainant a blue pill and had raped her. These details were not in the detective's summary. The judge was also informed that Appellant had been in possession of L.R.'s statement, as well as her name and address, for nearly 2½ half years. The judge ruled that L.R. could testify as a prompt complaint witness but not in exhaustive detail. L.R. testified at

trial that the complainant told her that Appellant had given her a blue pill and raped her.

We conclude that the motions judge properly exercised his discretion in permitting L.R.'s testimony. The Commonwealth produced all that it had during discovery: the detective's short summary of his conversation with L.R. Indeed, the Commonwealth not only acted in good faith but did more than the law required. Under Pennsylvania Rule of Criminal Procedure 573, the trial court may order the Commonwealth to produce "all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial" during pretrial discovery. Pa.R.Crim.P. 573(B)(2)(a)(ii). Informal notes compiled by investigators during interviews, such as the detective's conversation with L.R., are not subject to discovery because they are not "substantially verbatim oral statements." **Commonwealth v. Stetler**, 95 A.3d 864, 877 (Pa. Super. 2014). In short, the Commonwealth did not have to produce anything at all, so Appellant cannot complain that what he received was insufficient.

Appellant next contends that the motions judge erred in denying his motion *in limine* to pierce the Rape Shield Law, 18 Pa.C.S. §3104, to inquire into a notation in the victim's medical records for September 10, 2008 that "something happened four weeks ago." We review rulings on the admissibility of evidence of the sexual history of a sexual abuse complainant for abuse of discretion. **Commonwealth v. K.S.F.**, 102 A.3d 480, 483 (Pa. Super. 2014).

The Rape Shield Law provides that evidence of specific instances of the alleged victim's past sexual conduct "shall not be admissible . . . except evidence of the alleged victim's past sexual contact with the defendant where consent of the alleged victim is at issue . . . ." 18 Pa.C.S.A. §3104(a). **See Commonwealth v. Burns**, 988 A.2d 684, 689 (Pa. Super. 2009) (*en banc*) (Rape Shield Law prevents trial from shifting focus from accused's guilt to victim's virtue and chastity and excludes irrelevant and abusive inquiries about victim's past sexual conduct). Courts have also interpreted the Rape Shield Law to allow evidence that shows a motive to fabricate or seek retribution. **Id.** at 690.

Appellant's argument fails for multiple reasons. First, a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial. **Burns**, 988 A.2d at 690 (citing **Commonwealth v. Beltz**, 829 A.2d 680, 684 (Pa.Super.2003) (failure to make written motion bars review of decision at trial to exclude)). Appellant failed to file a written motion prior to trial and thus lost the right to seek relief under the Rape Shield Law.

Second, consent is not a valid defense to Appellant's conduct, since the complainant was beneath the age of consent. Moreover, the defense did not assert consent; it argued that the abuse never occurred.

Third, the Rape Shield Law requires the defendant to make an offer of proof sufficient on its face to compel an in camera hearing. 18 Pa.C.S.

§3104(b). Appellant's proffer of a medical report that "something happened four weeks ago" was not sufficiently specific to support an *in camera* hearing. It mentioned nothing about Appellant or alleged consensual sexual contact with him, or, for that matter, sexual contact with anyone else. Neither did it show bias or a motive to fabricate or tend to disprove the allegations against Appellant. **Burns**, 988 A.2d at 690 (specific proffer requirement prevents fishing expeditions into areas protected by the Rape Shield Law). In fact, Appellant's proffer would have been deficient even if it alleged sexual contact with someone else four weeks before. **See Commonwealth v. Fink**, 791 A.2d 1235, 1240 (Pa. Super. 2002) (evidence that victim may have had sexual contact with someone else does not exonerate the accused).

For his fourth issue, Appellant contends that the motions judge abused his discretion in denying his motion to preclude his fifteen prior *crimen falsi* convictions—one for burglary and the others for theft—that all took place twenty to thirty years before trial. Appellant appears to suggest that the denial of this motion prevented him from testifying in his defense. We review rulings on the admission of *crimen falsi* for abuse of discretion. **Commonwealth v. Hoover**, 107 A.3d 723, 729 (Pa. 2014).

The Rules of Evidence provide in relevant part:

**(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, must be admitted if it involved dishonesty or false statement.

**(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1)  its probative value substantially outweighs its prejudicial effect; and

(2)  the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609.

To determine whether *crimen falsi* more than ten years old are substantially more probative than prejudicial, the trial court must consider:

(1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant's credibility.

**Hoover**, 107 A.3d at 725. However, this test "is not a matter of merely counting up factors. The vesting of discretion allows for flexibility in balancing factors, according to the circumstances." **Id.** at 730.

In **Commonwealth v. Cascardo**, 981 A.2d 245 (Pa. Super. 2009), we applied the above factors to uphold a pretrial ruling permitting impeachment of the defendant with his sixteen year old *crimen falsi* convictions for theft,

- 13 -

robbery and other offenses should he decide to testify at his murder trial.

Factors one, two, three, and five all favored admission, we noted, because the

evidence bore on veracity, was not "propensity" driven, involved crimes

committed in the defendant's adulthood, and lacked an adequate alternative

for impeachment purposes. Of particular importance in our decision, however,

was the fourth factor, because the Commonwealth's case, which alleged the

conspiratorial murder of a creditor in the defendant's loan sharking scheme,

turned on the credibility of a single witness who testified that he and the

defendant had carried out the murder:

> Cascardo is the only other person who could have testified about
> the murder. Cascardo presented an alibi witness intended to show
> he could not have killed Hoffner because he was not at the scene
> of the murder. Attacking Cascardo's credibility was particularly
> important given his defense was totally contradictory to the
> Commonwealth's version of the facts.

*Id.* at 256.

Here, as in **Cascardo**, the five-factor test weighed in favor of admitting

Appellant's *crimen falsi* convictions had he chosen to take the stand. Appellant

had fifteen such convictions dating from 20 to 33 years before trial.[3] This

substantial number of *crimen falsi* convictions reflects strongly on Appellant's

veracity. Second, these convictions had the legitimate purpose of discrediting

---

[3] Rule 609(b) provides that the ten-year period runs from the defendant's release from confinement if it occurs later than his conviction. In this case, there is no record evidence whether Appellant went to prison for any of his *crimen falsi* convictions or when he was released from prison for the last of these crimes.

Appellant as untruthful if he testified—and since a judge presided over trial instead of a jury, it is safe to assume that this evidence would not have been misconstrued to mean that Appellant had a propensity to sexually abuse children. Third, Appellant's age and circumstances—he was 52 years old and lived with the victim's mother—did not bear heavily in favor of or against admission of his *crimen falsi* convictions. The fourth factor (the prosecution's need to present his convictions versus his ability to present his version of the events) favored the Commonwealth. The prosecution would have needed to impeach Appellant with his *crimen falsi* convictions had he chosen to testify, because the veracity of his testimony would have been a key consideration for the factfinder. In contrast, without taking the stand, Appellant was able to relate his version of events through three other witnesses: his daughter, sister, and sister's friend. Fifth, the record did not suggest alternate means to attack his credibility. Our review of this five-factor test supports the motion court's decision to deny Appellant's motion *in limine*.

In his final argument, Appellant contends that the motions judge committed an abuse of discretion by denying his motion to introduce the complainant's diary entry admitting her prior bad act of stealing her mother's engagement ring. The diary entry was on March 4, 2006, over two years before the complainant reported Appellant's acts to the police.

The Rules of Evidence provide in pertinent part:

**(b) Other crimes, wrongs, or acts.**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b) (2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404. We review the trial court's decisions under this rule for abuse of discretion. *Commonwealth v. Semenza*, 127 A.3d 1, 4 (Pa. Super. 2015).

The motions judge ruled that the diary entry lacked probative value. We hold that this was a proper exercise of discretion. Had Appellant disciplined the complainant over the ring incident, the diary entry might have been relevant to show that the complainant harbored some animus against Appellant over the ring. There is no evidence, however, that Appellant disciplined the complainant or even knew about the incident. Neither does Appellant point to any other nexus between the diary entry in March 2006 and the complainant's report of Appellant's sexual abuse 2½ years later.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/18